## PFEIFFER v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

[No. 370, September Term, 1966.]

*Decided June 6, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Harry Goldman, Jr.* for appellant.

*Milton I. Vogelhut* for appellee.

HORNEY, J., delivered the opinion of the Court.

Walter Pfeiffer, claiming that the denial of insurance coverage and the failure to give timely notice of coverage to the Department of Motor Vehicles caused him to lose his operator license and the registration card and tags to his automobile, sued the State Farm Mutual Automobile Insurance Company and its agent for breach of contract, fraudulent misrepresentation, conspiracy to defraud, intentional tortious alteration of an automobile liability insurance policy and negligence.

The policy, issued on March 11, 1961, stated that it became effective at 12:01 a.m. The insured had an accident on the same

58

day at 1:00 p.m. The insurer, claiming the policy did not become effective until 8:00 p.m., denied coverage on March 29, 1961, and neglected or refused to notify the department either of the coverage or the withdrawal thereof. As a result of losing his license and tags and the consequent inability to transport himself to and from work, the insured claimed that he lost his automobile and his livelihood. Seven months later, on November 7, 1961, the insurer acknowledged its liability by filing an SR-21 form showing that the policy was in effect at the time of the accident.

The demurrer to the original declaration having been sustained, the plaintiff filed an amended declaration on August 6, 1964. A general issue plea was filed on August 20, 1964. At the same time the defendants sought to discover, among other things, the facts on which the plaintiff relied to show (11)[1] that the insurance company "wrongfully and wilfully" breached the contract of insurance; (12) that the company "wilfully, fraudulently and maliciously" altered the policy and "deceitfully" misrepresented the provisions thereof; (13) that the defendants "combined, connived, conspired and colluded between and among themselves and other persons" to defraud and deprive the plaintiff of his contract rights; (14) that the defendants "tortiously and intentionally" altered the policy and "maliciously" interfered with the lawful rights of the plaintiff; and (18) that if the plaintiff were absent from his employment "because of the occurrence," to "state as to each such absence the particular reason therefor, the dates thereof and the compensation, if any, lost thereby."

The answers of the plaintiff, filed more than two months later on Octber 23, 1964, were to the effect (11) that the defendants, although knowing that the "policy covered the accident" and that they were wrong in believing "that the plaintiff was too helpless or ignorant to secure his rights," yet "maliciously, wilfully and intentionally violated the policy"; (12) that the defendants either "falsely altered its records to show an effective time of 8:00 p.m." as to when the policy took effect

---

1. Throughout the opinion the two digit numbers in parenthesis refer to the number of the interrogatory questions, answers and exceptions.

or "fraudulently" or "deceitfully misrepresented" such records; (13) that the "conspiracy and combination consists of the acts and conduct" set forth in the answers to 11 and 12; (14) that the answer to this interrogatory is the same as 11 and 12; and (18) that the plaintiff "made $4021.67 in 1960," that "in 1961, the year in which his license tags and automobile drivers license were taken up as a result of defendants' unlawful acts" he was "able to earn" only $2127.82 and that the unlawful acts of the defendants "directly contributed to this wage loss." The exceptions of the defendants to the answers, claiming that they were insufficient and evasive, were promptly sustained by the court with leave to amend.

After a delay of more than two hundred and forty days the plaintiff filed supplemental answers to the interrogatories on June 25, 1965. The answers to 11, 12, 13 and 14 were substantially the same as before. But as to 18, although admitting his inability to state the exact time lost because one of his employers had destroyed some of his work records, he informed the defendants that on seven days in March, April and May of 1961 he had lost 62½ hours work for a tile company which, at $2.60 an hour, amounted to $162.50; and that on thirteen days in January, February, April and May of 1962 he had lost a total of $451.75 from another tile company. He further indicated that additional hours of available yet lost work would be established by his employers at the trial. Again, the defendants, claiming that the answers were still insufficient and evasive, filed exceptions to the supplemental answers because the replies to four of the questions were basically similar to the original answers and because they had a right to an answer with respect to lost wages prior to, and not at the time of, the trial. Again the lower court sustained the exceptions with leave to amend within thirty days. Although no record was made of what transpired at this hearing, the defendants, on the one hand, claim that the motions judge warned the plaintiff that sanctions would be imposed for failure to file proper answers within the time specified. The plaintiff, on the other hand, claims that the judge suggested the proper way to answer the interrogatories.

On March 14, 1966, ninety-five days later, the plaintiff filed

second supplemental answers. On the whole these answers, though somewhat shorter, were in substance the same as the first supplemental answers. And again, because the answers were insufficient and evasive, exceptions were taken to them. On this occasion, no hearing having been requested, the court sustained the exceptions *sua sponte*. But, at the same time, by a letter dated April 1, 1966, the court advised the attorney for the plaintiff as well as the attorney for the defendants that unless proper interrogatories were filed on or before April 16, 1966, it would, in addition to applying sanction by allowing a fee of $50 to counsel for the defendants and requiring the plaintiff to pay the accrued court costs, render a judgment by default against the plaintiff and an order *nisi* was passed to that effect. The plaintiff moved to strike the order, but the court, after a hearing, denied the motion and directed the entry of a judgment of *non pros* absolute in favor of the defendants, whereupon the plaintiff appealed to this Court.

According to the record, the defendants promptly excepted to the series of answers filed by the plaintiff to the interrogatories, but there is no indication that they ever complained to the court about the inordinate delays of the plaintiff that ensued between the making of the several exceptions and the filing of the respective answers thereto.

The principal questions on appeal concern the propriety of imposing sanctions and entering judgment by default for failure to file timely and adequate answers to the interrogatories.

The appellant, claiming that the power of the court to assess penalties is limited in the absence of a motion and notice thereof, contends that the court should not have done so without first giving him an opportunity to be heard again. We do not agree. Not only had the appellant been given notice of what the court intended to do if proper answers to the interrogatories were not finally filed on or before a specified date, but, as we read it, there is nothing in Rule 417 d to prevent a judge from imposing sanctions on his own motion. See *Miller v. Talbott,* 239 Md. 382, 211 A. 2d 741 (1965) and *Guerriero v. Friendly Finance Corp.,* 230 Md. 217, 186 A. 2d 881 (1962). Moreover, it is clear that what the motions judge did under the circumstances of this case was neither unreasonable nor an abuse

of his discretion. *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 174 A. 2d 768 (1961). The sanctions were properly granted.

While it is true that a judge also has discretion to enter a judgment by default in a proper case, *Guerriero v. Friendly Finance Corp., supra,* we think the case should have been tried on the first and fifth counts alleging breach of contract and negligence because the plaintiff, having stated the facts on which the breach of contract and acts of negligence were based, appears to have done what he could to give the defendants such information as was available to him with respect to the wages he claimed to have lost as a consequence of the suspension of his operator licence and registration card and tags. But this has no application to the second, third and fourth counts for as to these it is apparent that the default judgment was properly granted. Usually a plaintiff who alleges a claim too broadly, in the belief or hope that when called upon he can find facts to support the pleading, meets with difficulty, and that seems to have been the situation here. The case, however, will be remanded for a trial limited to such relevant facts as were stated in the original and supplemental answers to the interrogatories, with respect to the first and fifth counts in the declaration, which tend to show breach of contract and negligence and damage therefrom. With this holding, we need not consider whether there was a denial of due process. Nor is it necessary to consider the motion of the appellant to strike certain portions of the appellee's brief.

> *Affirmed in part and reversed in part and case remanded for a limited trial in accord with this opinion; the costs on appeal to be paid one-half by the appellant and one-half by the appellee.*