720 A.2d 1196

**Marianne WAREHIME et ux.**

**v.**

**Richard DELL et al.**

**No. 165, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 1, 1998.

32

Judith S. Stainbrook, Westminster, for Appellants.

Michael E. Mehring (Shugarman & Mehring, on the brief), Baltimore, for Appellees.

Argued before HARRELL and HOLLANDER, JJ., and ALBERT J. MATRICCIANI, Jr., Judge (Specially Assigned).

HOLLANDER, Judge.

In this case, we must determine whether the circuit court was entitled to dismiss appellants' complaint against nine defendants/appellees, as a sanction for appellants' failure to respond to interrogatories propounded by only one defendant/appellee.

On December 9, 1992, Marianne and Earl A.J. Warehime, appellants, instituted suit in the Circuit Court for Carroll County against nine members of the Manchester Fire Engine and Hook and Ladder Co. No. 1 (the "Company"), all of whom are appellees.[1] The suit alleged violations of 42 U.S.C. § 1983 and Article 24 of the Maryland Declaration of Rights, stemming from the Company's decision to remove appellants from their respective positions at the Company. The circuit court dismissed the complaint on August 8, 1997, because appellants failed to respond to interrogatories propounded by Richard Dell, one of nine defendants below. Appellants timely noted their appeal and present the following issues for our review, which we have rephrased and condensed:

I. Did the trial court abuse its discretion when it dismissed the complaint against Richard Dell, as a sanction for appellants' failure timely to answer Dell's interrogatories?

II. Even if the trial court properly dismissed the complaint as to Dell, did the court err or abuse its discretion in dismissing the complaint as to the remaining eight defen-

---

1. Specifically, Marianne Warehime sued appellees Richard A. Dell, Brian Graf, Gary Eppley, William S. Black, Jr., Ralph Dull, Clay Black, Eugene Blake Lippy, Steven Miller, and William S. Black, Sr., individually and in their capacities as members of the disciplinary committee of the Company. Earl Warehime only sued Richard A. Dell, individually and in his capacity as president of the Company.

dants, none of whom had propounded interrogatories to appellants?

We conclude that the trial court did not abuse its discretion in dismissing the complaint as to Dell, the one defendant who propounded interrogatories to appellants. Conversely, we are of the view that the court erred in dismissing the complaint as to the remaining eight defendants, who did not propound interrogatories to appellants. Therefore, we shall affirm in part and reverse in part.

## Factual Background [2]

According to the complaint, Marianne Warehime "ha[d] been a member of the [Company] for eighteen years and ha[d] served as the Secretary of [the] company for eleven years."[3] Mr. Warehime, an Ambulance Captain, was a twenty-nine year veteran of the Company. During the summer of 1992, the Company sponsored a carnival at the Carroll County fairgrounds. Ms. Warehime "worked" at the carnival in a capacity not disclosed in the record.

Appellants alleged that on the evening of June 30, 1992, while Ms. Warehime was working at the carnival, the Company convened an impromptu meeting of the disciplinary committee at the fairgrounds to investigate an alleged "pie-throwing incident" at the carnival involving Ms. Warehime and her daughter, Suzannah. Although Ms. Warehime denied involvement, the disciplinary committee decided that night to suspend her from the Company for one year and to bar her from holding office for three years. Thereafter, for reasons not entirely clear in the complaint, Mr. Warehime also came under the scrutiny of the disciplinary committee. In the weeks that

---

2. We have gleaned the factual background presented here largely from appellants' complaint. We observe that the events that led to appellants' lawsuit are not well developed in the record. Nevertheless, in view of the narrow issues presented, most of the underlying facts are not particularly important.

3. Ms. Warehime's duties as a "member" of the Company and as "Secretary" are not made clear in the record. Nor is it clear whether members or officers of the Company were employees.

followed, the Company discussed the "pie-throwing incident" and the Warehimes' status within the Company at six meetings of the disciplinary committee and the general membership.[4] On the evening of July 27, 1992, after one of the meetings of the disciplinary committee, Mr. Warehime was asked to resign from the Company, but he refused to do so. Consequently, on August 6, 1992, the Company notified Mr. Warehime by certified mail that he had been removed from his position as a member.

Appellants subsequently lodged a twelve-count complaint, which contained six counts on behalf of Ms. Warehime and six counts on behalf of Mr. Warehime. Ms. Warehime sued all nine appellees, individually and in their official capacities, while Mr. Warehime only sued Dell, the president of the Company. Each count sought $50,000.00 in compensatory damages and costs, and six of the counts also requested punitive damages. Appellees answered on January 22, 1993.

Thereafter, appellees instituted a declaratory judgment action in the circuit court on September 21, 1993, against their insurance company, seeking to require their insurance carrier to defend the Warehimes' suit. At the same time, they moved to stay the Warehimes' case pending resolution of the declaratory judgment action. The circuit court granted appellees' motion to stay on October 26, 1993. The record does not disclose when or how the declaratory judgment action was resolved. Moreover, for reasons not made clear in the record, the stay was not lifted until September 1996.

On July 14, 1995—while the stay was in effect—the Warehimes served interrogatories upon appellees. Presumably because of the stay, appellees did not respond. In any event, appellants never sought an order compelling discovery, nor did

---

**4.** According to the complaint, the disciplinary committee met on July 3, 1992, at the request of Mr. Warehime, who was a member of the committee. Mr. Dell, the president of the Company, allegedly scheduled a special meeting of the general membership for July 4 to discuss the "pie-throwing incident". The disciplinary committee met again on July 10, July 27, and July 30. Finally, the general membership discussed the incident at its meeting on August 4, 1992.

they move for sanctions. The case was otherwise dormant until July 15, 1996, when the court sent the parties a notice of contemplated dismissal pursuant to Maryland Rule 2–507. Appellants responded on August 14, 1996, with a motion to defer dismissal and lift the stay. The Warehimes asserted, *inter alia,* that they had failed to pursue the case, even though appellees' motion for declaratory judgment had been resolved, because they were waiting for appellees to file a threatened motion to dismiss. On September 5, 1996, the court granted appellants' motion and lifted the stay.

On December 17, 1996, more than four years after suit was instituted, the court held a status conference. On the same date, the court entered a scheduling order mandating, *inter alia,* service of interrogatories and requests for document production by March 15, 1997. All other discovery was to be completed by August 15, 1997.

Thereafter, on March 13, 1997, Dell propounded the interrogatories to appellants that are at the center of this dispute.[5] Two months later, on May 14, 1997, appellees' counsel sent a letter to appellants' counsel requesting a response to the interrogatories. The letter claimed to be a "good faith at-

---

5. At oral argument, counsel for both sides agreed that Dell propounded interrogatories to both appellants. Nevertheless, we observe that the record is not entirely clear as to whether Dell sent interrogatories to both appellants or just to Ms. Warehime. The record extract does not contain a copy of the interrogatories and, in the Appendix to their brief, appellees only included a copy of Dell's interrogatories to Ms. Warehime. Moreover, although the record extract contains two documents generated by appellees, entitled "Notice of Discovery/Certificate of Service" (the "Notice"), pursuant to Md. Rule 2–401(d)(2), the language in each Notice is somewhat imprecise; each merely indicates that "Interrogatories" were served by mail. One Notice indicates that Mr. Warehime was the "person served," and the other Notice indicates that Ms. Warehime was the "Person Served." But, because the documents merely list the type of discovery as "Interrogatories," without also including the name of the person to whom the interrogatories were actually directed, it is possible that one party was served with the interrogatories and the other party merely received notice that the other party was served with the interrogatories. *Compare, e.g.,* appellants' "Notice of Service" filed in July 1995, reflecting issuance of "Plaintiffs' Interrogatories to Defendants".

tempt to resolve a discovery dispute, pursuant to Maryland Rule 2–431."

On May 29, 1997, appellee Ralph Dull (not to be confused with appellee Richard Dell), answered appellants' interrogatories of July 14, 1995.[6] On the same date, by letter to appellants' attorney, appellees' counsel again requested answers to Dell's interrogatories. Counsel also threatened to file a motion for sanctions if the interrogatories were not answered within ten days. Again, no response was forthcoming. On July 17, 1997, more than four months after Dell propounded interrogatories to appellants, a motion for sanctions was filed, pursuant to Maryland Rule 2–433, by "[d]efendants Ralph Dull et al.," even though the interrogatories at issue had been propounded only by Dell.

Surprisingly, appellants did not respond to the motion for sanctions. As a result, on August 8, 1997, the court had before it an unopposed motion for sanctions that it granted, stating: "Plaintiffs' Complaint is hereby DISMISSED for failure to respond to discovery." An entry dated August 14, 1997, in the computerized docket of the circuit court, contains the following notation:

ORDER OF THE COURT RECEIVED AUGUST 8, 1997 DISMISSING THE COMPLAINT FOR FAILURE TO RESPOND TO DISCOVERY. COPIES SENT TO ATTORNEYS [names omitted].

On August 25, 1997, appellants timely filed a motion to alter or amend judgment, in which they asserted that "Plaintiff's counsel's office manager" had "suddenly left two months [prior to the motion to alter or amend] and Plaintiff inadvertently failed to file the [answers to] Interrogatories." Appellants argued, *inter alia,* that dismissal was too extreme a sanction

---

**6.** We note that the "Notice of Discovery/Certificate of Service" inaccurately describes the discovery as "Plaintiff's Answers to Defendant's Interrogatories." Dull, of course, was a defendant, not a plaintiff. Further, the record does not reflect that the other defendants ever answered appellants' interrogatories or joined in Dull's answers to the interrogatories. In any event, appellants have not complained that the other appellees failed to answer the interrogatories.

under the circumstances, and that even if dismissal was proper as to Dell, it was not warranted as to those defendants who had not submitted interrogatories. The court denied appellants' motion on September 10, 1997. This appeal followed.

## Discussion

### I.

Preliminarily, appellees assert in the fact section of their brief that appellants' motion to alter or amend was untimely because it was not filed within 10 days of entry of judgment. The contention has no merit.

As we noted, the court's order of dismissal was signed and received in the clerk's office on August 8, 1997, but it was not docketed until August 14, 1997. "Entry of judgment," which triggered the beginning of the ten-day motions period, occurred on August 14, 1997, when the order was docketed. See *Waller v. Maryland Nat'l Bank,* 332 Md. 375, 378–79, 631 A.2d 447 (1993) (the "date of entry" defined in Rule 2–601 "must be determined by reference to the docket entry"); *Estep v. Georgetown Leather Design,* 320 Md. 277, 287, 577 A.2d 78 (1990) (concluding that "a final judgment disposing of all claims or parties was not in existence until the judgment ... was entered on the docket...."). On Monday, August 25, 1997, appellants filed their motion to alter or amend.

Appellees seemingly overlook that August 24, 1997, the tenth day after entry of judgment, was a Sunday. Maryland Rule 1–203(a) provides that in the event the last day of a time period proscribed by the rules falls on a weekend, the period in which to complete the act "runs until the end of the next day that is not a Saturday, Sunday, or holiday...." *See Ungar v. Handelsman,* 325 Md. 135, 139, 599 A.2d 1159 (1992) (motion for reconsideration timely when ten day period ended on a Saturday and movant filed the next Monday); *Hampton v. Univ. of Maryland at Baltimore,* 109 Md.App. 297, 308–09, 674 A.2d 145, (stating that six-month probationary period ran until the end of the next Monday when final day fell on a Sunday), *cert. denied,* 343 Md. 333, 681 A.2d 68, *and cert. denied,* —— U.S. ——, 117 S.Ct. 592, 136 L.Ed.2d 521 (1996);

*In re Stephen J.,* 48 Md.App. 736, 738, 429 A.2d 307 (1981) (thirty day period in which to hold an adjudicatory hearing under former Rule 914 fell on Sunday).

Because appellants, in effect, filed their motion within ten days of the docketing of the August 14, 1997 order, the appeal period was tolled. *B & K Rentals and Sales Co. v. Universal Leaf Tobacco Co.,* 319 Md. 127, 132, 571 A.2d 1213 (1990). Thereafter, they noted an appeal within thirty days of the court's disposition of the revisory motion, so their appeal was timely filed.

## II.

Appellants claim that their failure to respond to Dell's interrogatories did not amount to the sort of egregious conduct that justified dismissal of the complaint against Dell. Appellants' contention is premised on the following arguments: 1) "the trial court failed to consider less extreme sanctions;" 2) appellees, too, were dilatory with regard to discovery; they failed to answer interrogatories for "approximately three years"; 3) appellants did not ignore court orders; and 4) appellants' conduct did not prejudice appellees.

We begin our analysis with a review of the pertinent Maryland discovery rules. Maryland Rule 2–421 provides:

**Rule 2–421. Interrogatories to parties**

(a) *Availability; number.* Any party may serve at any time written interrogatories directed to any other party. Unless the court orders otherwise, a party may serve one or more sets having a cumulative total of not more than 30 interrogatories to be answered by the same party. Interrogatories, however grouped, combined, or arranged and even though subsidiary or incidental to or dependent upon other interrogatories, shall be counted separately.

\* \* \*

(b) *Response.* The party to whom the interrogatories are directed shall serve a response within 30 days after service of the interrogatories....

Md. Rule 2–432 provides, in pertinent part:

### Rule 2–432. Motions upon failure to provide discovery.

(a) *Immediate sanctions for certain failures of discovery.* A discovering party may move for sanctions under Rule 2–433(a), without first obtaining an order compelling discovery under section (b) of this Rule, if a party . . . fails to serve a response to interrogatories under Rule 2–421. . . .

(b) *For order compelling discovery.* A discovering party, upon reasonable notice to other parties and all persons affected, may move for an order compelling discovery if

(1) there is a failure of discovery as described in section (a) of this Rule,

\* \* \*

(4) a party fails to answer an interrogatory submitted under Rule 2–421,

\* \* \*

(d) *Time for filing.* A motion for an order compelling discovery or for sanctions shall be filed with reasonable promptness.

Maryland Rule 2–433 sets forth the sanctions that the court may impose for discovery violations. It provides, in pertinent part:

### Rule 2–433. Sanctions

(a) *For Certain Failures of Discovery.* Upon a motion filed under Rule 2–432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including one or more of the following:

(1) An order that the matters sought to be discovered, or any other designated facts shall be taken to be established for the purpose of the action in accordance with the claim of the party obtaining the order;

(2) An order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; or

(3) An order striking out pleadings or parts thereof, or staying further proceeding until the discovery is provided, or dismissing the action or any part thereof, or entering a judgment by default that includes a determination as to liability and all relief sought by the moving party against the failing party if the court is satisfied that it has personal jurisdiction over that party.

\* \* \*

(b) *For Failure to Comply with Order Compelling Discovery.* - If a person fails to obey an order compelling discovery, the court, upon motion of a party and reasonable notice to other parties and all persons affected, may enter such orders in regard to the failure as are just, including one or more of the orders set forth in section (a) of this Rule. If justice cannot otherwise be achieved, the court may enter an order in compliance with Rule P4 treating the failure to obey the order as a contempt.

As Dell's interrogatories were mailed on March 13, 1997,[7] appellant's answers were due by Tuesday, April 15, 1997. *See* Maryland Rule 1–203(c) (providing a party with an additional three days to respond when service is made by mail). Thus, when the motion for sanctions was filed on July 17, 1997, appellants' answers to interrogatories were more than ninety days late.

"Maryland law is well settled that a trial court has broad discretion to fashion a remedy based on a party's failure to abide by the rules of discovery." *Bartholomee v. Casey,* 103 Md.App. 34, 48, 651 A.2d 908 (1994), *cert. denied,* 338 Md. 557, 659 A.2d 1293 (1995); *see Heineman v. Bright,* 124 Md.App. 1, 7, 720 A.2d 1182 (1998); *Beck v. Beck,* 112 Md.App.

---

7. As we noted earlier, in the scheduling order of December 17, 1996, the court required the parties, *inter alia,* to *serve* interrogatories by March 15, 1997. Thus, Dell's interrogatories were mailed just two days before the court's deadline. Appellants have not claimed that Dell's interrogatories were untimely served under the scheduling order, however.

197, 209, 684 A.2d 878, *cert. denied,* 345 Md. 456, 693 A.2d 354 (1997). Indeed, in order to impose sanctions, a court need not find " 'wilful or contumacious behavior.' " *Beck,* 112 Md.App. at 210, 684 A.2d 878 (citation omitted). Rather, in imposing sanctions, a trial court has "considerable latitude." *Miller v. Talbott,* 239 Md. 382, 387, 211 A.2d 741 (1965).

█ Our review of the trial court's resolution of a discovery dispute is quite narrow; appellate courts are reluctant to second-guess the decision of a trial judge to impose sanctions for a failure of discovery. Accordingly, we may not reverse unless we find an abuse of discretion. In *Mason v. Wolfing,* 265 Md. 234, 236, 288 A.2d 880 (1972), the Court said: "Even when the ultimate penalty of dismissing the case or entering a default judgment is invoked, it cannot be disturbed on appeal without a clear showing that [the trial judge's] discretion was abused." *See Berkson v. Berryman,* 63 Md.App. 134, 142, 492 A.2d 338, *cert. denied* 304 Md. 296, 498 A.2d 1183 (1985).

In analyzing the propriety of the court's decision to dismiss the case against Dell because of the discovery violation, we have considered several cases involving discovery violations. Our starting point is our recent decision in *Heineman v. Bright.*

In *Heineman,* the estate of G. Wendel Heineman ("the Estate") sued Mr. Heineman's second wife and widow, Jacklyn Kay Heineman, and her daughter, Toy Michelle Evans, to recover a set of bearer bonds that Ms. Heineman claimed her deceased husband had given to her as a gift. Following Mr. Heineman's death, Ms. Heineman moved the bonds from a safe deposit box titled in Mr. Heineman's name to an account she held jointly with Ms. Evans. As a result, the Estate sued to recover the bonds. During the course of discovery, the Estate propounded interrogatories solely to Ms. Heineman, which she never answered. After the close of discovery, Ms. Heineman sought to utilize two fact witnesses whose names had been sought in the interrogatories. At that point, the Estate moved to bar the witnesses from testifying at trial,

because Ms. Heineman earlier failed to identify the witnesses in answers to interrogatories. The court granted the motion, excluding both witnesses. Because the imposition of sanctions deprived Ms. Heineman of all of her relevant witnesses, the court then granted summary judgment against both defendants.

We determined that a trial court must exercise its discretion in imposing sanctions in light of the factors established in *Taliaferro v. State,* 295 Md. 376, 390–91, 456 A.2d 29, *cert. denied,* 461 U.S. 948, 103 S.Ct. 2114, 77 L.Ed.2d 1307 (1983); *see also Shelton v. Kirson,* 119 Md.App. 325, 331, 705 A.2d 25 (stating that "the *Taliaferro* guidelines apply in civil cases as surely as they do in criminal cases"), *cert. denied,* 349 Md. 236, 707 A.2d 1329 (1998); *Eagle–Picher Indus., Inc. v. Balbos,* 84 Md.App. 10, 28–34, 578 A.2d 228, *rev'd in part on other grounds,* 326 Md. 179, 604 A.2d 445 (1992).

██ Admittedly, the sanction of exclusion of a witness's testimony, as in *Heineman,* is not the same as the sanction of dismissal of a case. But in *Heineman,* the exclusion of the witnesses was tantamount to a dismissal; without the witnesses whose testimony was crucial to appellants' case, dismissal was warranted. What the *Taliaferro* Court said in the context of the exclusion of a witness's testimony is worth repeating here:

> Under the approach taken by most courts, whether the exclusion of ... testimony is an abuse of discretion turns on the facts of the particular case. Principal among the relevant factors which recur in the opinions are whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance. Frequently these factors overlap.

*Taliaferro,* 295 Md. 376 at 390–91, 456 A.2d 29.

*Lone v. Montgomery County,* 85 Md.App. 477, 584 A.2d 142 (1991), also provides guidance to us as we assess the court's

imposition of the sanction of dismissal as to Dell. In *Lone*, Montgomery County sought to enforce a zoning ordinance against several nonconforming landowners who had unsuccessfully challenged the ordinance in federal court. The County filed a complaint for injunctive relief against one of the nonconforming landowners, along with interrogatories. When the landowner did not respond to the County's interrogatories, the County filed a motion for sanctions under Rule 2–433. After the landowner did not respond, the court entered a default judgment and granted the relief requested by the County. Belatedly, the landowner answered the interrogatories and filed a motion to set aside the default judgment, which the court denied. On appeal, we observed that the trial judge, "[a]s he is allowed to do . . . assigned little weight to the appellant's unsupported explanation for the failure to file timely" answers to interrogatories. *Id.* at 486, 584 A.2d 142. Accordingly, we held that the court did not abuse its discretion. *Id.* at 487, 584 A.2d 142.

*Rubin v. Gray*, 35 Md.App. 399, 370 A.2d 600 (1977), is also noteworthy. There, interpreting Maryland Rule 422, a predecessor to Maryland Rule 2–433, we upheld a dismissal for failure to answer interrogatories. Prior to dismissing the suit, the court offered the plaintiffs an opportunity to "justify or excuse the failure to comply" which, in our estimation, "decrie[d] an abuse of discretion. . . ." *Id.* at 400, 370 A.2d 600. In reaching our decision, we also considered that the plaintiff "ignored repeated written requests to [answer the discovery]; violated agreements to comply within extended deadlines; failed, upon order of court, to show cause why judgment non prosequitur should not be entered; and, after dismissal, was unable to convince the court to reconsider. . . ." *Id.*

The Court of Appeals reached a similar conclusion in *Miller v. Talbott, supra*, 239 Md. 382, 211 A.2d 741. In that case, defendants in a contract case failed to answer five interrogatories, prompting the propounding party to move for a decree *pro confesso*. The interrogatories were requested on January 11, 1964; the motion for a decree pro confesso was made March 17, 1964. The trial court gave the non-responsive

party until April 3 to show cause why the decree should not be entered. After the party failed to answer, the trial court entered the decree and set a hearing to determine the appropriate relief for the prevailing parties. On appeal, the Court affirmed the right of the trial court to enter the decree, stating:

> Under the circumstances here, where defendants or counsel for the defendants had every opportunity to answer the five interrogatories propounded to them; where the court granted an additional period of time in which to show cause why the motion for a decree *pro confesso* should not be granted, rather than summarily entering such a decree,—we can only conclude—assuming abuse of discretion to be the applicable test—that no abuse of discretion was shown in entering [the decree].

*Miller*, 239 Md. at 388, 211 A.2d 741.

We are also guided by the recent case of *Shelton v. Kirson, supra*, 119 Md.App. 325, 705 A.2d 25. *Shelton* involved a discovery violation in connection with time limits established by a scheduling order. There, the plaintiff in a lead paint case named an expert almost a year after the expiration of the discovery deadline, and sought an extension from the trial court of the discovery period, in order to accommodate the new witness. The circuit court barred the use of both the expert's report and the expert. Absent an expert, the court granted summary judgment in favor of the defendant. On appeal, we recognized a plaintiff's duty to move his own case forward, and upheld the decision of the trial court to exclude the expert who was procured after the date established in the scheduling order. Writing for this Court, Judge Moylan said:

> Appellant's counsel knew from the outset of the litigation that an inspection of the premises was necessary for the successful pursuit of the appellant's claim. There was no reasonable excuse for the appellant's protracted inaction in this case.

\* \* \*

"For a trial court to permit a party to deviate so from a scheduling order without a showing of good cause is, on its face, prejudicial and fundamentally unfair to opposing parties, and would further contravene the very aims [of the rule] by decreasing the value of scheduling orders to the paper upon which they are printed."

*Shelton*, 119 Md.App. at 332–33, 705 A.2d 25 (quoting *Naughton v. Bankier*, 114 Md.App. 641, 654, 691 A.2d 712 (1997)).

The reasoning of the cases cited above leads us to conclude that the trial court did not abuse its discretion in dismissing appellants' complaint as to Dell. We explain.

We observe, first, that appellants' failure to answer interrogatories was a substantial, not a technical, discovery violation. This case had seemingly languished for almost five years, and is altogether unlike *Hart v. Miller*, 65 Md.App. 620, 501 A.2d 872, *cert. denied*, 305 Md. 621, 505 A.2d 1342 (1985). There, we determined that the trial court abused its discretion when it dismissed a case for failure of discovery, because "[w]hat remained to be done [in discovery] was trivial in comparison to what had already been undertaken." *Id.* at 628, 501 A.2d 872. But in this case, it was not as if appellants had diligently complied with numerous or burdensome discovery requests, so that one oversight should have been overlooked. To the contrary, virtually no discovery had been undertaken by the parties, and Dell made several efforts to procure answers to his interrogatories.

Furthermore, contrary to appellants' assertion, the trial court was not required to conclude that appellants' failure to answer the interrogatories did not prejudice Dell in his defense of the lawsuit. The purpose of discovery is to "eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation." *Baltimore Transit Co. v. Mezzanotti*, 227 Md. 8, 13, 174 A.2d 768 (1961). Interrogatories are often the most expeditious and least expensive way for a litigant to ascertain the witnesses and

documents that will be important in an impending trial. *See* Paul V. Neimeyer & Linda M. Shuett, *Maryland Rules Commentary* 298 (2nd ed.1992). At the time appellees moved for sanctions, the close of discovery was less than one month away. By the time it became apparent that the Warehimes were not going to respond to the motion for sanctions, the close of discovery was less than a week away. *See Berkson v. Berryman,* 63 Md.App. at 144, 492 A.2d 338 (citing the "effect of the [non-responding party's] conduct on the litigation then pending and, in particular, the closeness of the trial date" in affirming a decision to enter a judgment by default). With no response to the interrogatories, Dell would have had to prepare for trial armed only with the information contained in the Warehimes' complaint, unless the court extended the discovery period.

We acknowledge that, despite the age of this case, no trial date had yet been set at the time the circuit court considered the motion for sanctions. A date was to be determined at a September 5, 1997, settlement conference, which obviously was scheduled for a time when discovery was to have been completed; the conference never occurred because the case was dismissed in August 1997. Nevertheless, the lack of a trial date does not necessarily equate with a lack of prejudice, nor does it mean that an extension of discovery was necessarily justified. An extension of the discovery period, and a corresponding delay in having the case ready for trial, can generate adverse consequences to one side or the other. Many times, there is prejudice inherent in delaying a trial, because the memories and even the location of witnesses can become problematic when, as here, the years go by. Moreover, there is often an emotional toll on parties who are immersed in a pending lawsuit. Therefore, we decline to establish a hard and fast rule that prejudice cannot attach from a delay in discovery if no trial date has yet been set. Further, we reject any rule that would *require* a trial judge to extend the discovery deadline if a discovery violation occurs at a time when no trial date has yet been scheduled. Were we to find abuse of discretion in this case for these reasons, it would

be tantamount to a ruling that the court has no discretion at all in its resolution of a motion for sanctions.

It is also significant that appellants had ample notice that the answers to interrogatories were overdue, and they were not overdue by only a few days. In the period between the time that appellants' answers were due and the time that opposing counsel moved for sanctions, appellees' counsel wrote two letters, one on May 14, 1997, and the other on May 29, 1997, asking appellants' counsel to respond to the discovery. The second letter specifically put appellants' counsel on notice that appellees intended to seek sanctions if the response was not forthcoming. Therefore, appellants' counsel could not have been surprised when, more than six weeks after appellees' second letter and less than a month before the close of discovery, appellees finally asked the court for relief.

Thereafter, appellants' counsel remained unmoved even when the motion for sanctions was filed; the Warehimes never responded to the motion.[8] Consequently, on August 8, 1997, the court considered an unopposed motion for sanctions with respect to a complaint that was approximately five years old. Further, the court's scheduling order had clearly warned that the pre-trial order would be "rigidly enforced by the Court," and the appellants, in effect, violated the scheduling order, because the order contemplated answers to interrogatories on or about April 15, 1997. Thus, as in *Shelton,* appellants failed to do what was necessary to propel the litigation they had initiated almost five years earlier.

---

**8.** Appellants had until Monday, August 4, 1997 to respond to the motion. Md. Rule 1–203(a)(1); Md. Rule 2–311(b). The motion for sanctions was mailed by first-class mail on Tuesday, July 15, 1997, but it was not filed with the court until July 17, 1997. Allowing three extra days for service by mail, we count the eighteen-day period beginning from the date of mailing. *See* Md. Rule 1–321; Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 175 (2nd ed. 1992)("The fifteen day period allowed runs not from the filing of the motion, but from its service. Service under the rules is complete upon mailing, or upon delivery if mailing is not used"). Saturday, August 2, 1997, was eighteen days after July 15, 1997.

■ Moreover, as in *Shelton*, the trial court did not have to condone the discovery violation, absent a showing of good cause. Appellants did not establish good cause. Even after dismissal of the suit, the Warehimes failed to present the court with a viable excuse for what had transpired. Their only justification for their inattentiveness was a claim that "[p]laintiff's counsel's office manager suddenly left two months ago and Plaintiff[s] inadvertently failed to file the Interrogatories." Noticeably, the explanation as to why the interrogatories had not been answered did not elucidate why appellants' counsel ignored correspondence from opposing counsel, or why she failed to respond to appellees' motion for sanctions. Obviously, the court "assigned little weight" to appellants' explanation, "as [it] is allowed to do." *Lone*, 85 Md.App. at 486, 584 A.2d 142.

■ We also reject appellants' "good for the goose—good for the gander" argument, in which they essentially complain that they should not have been punished so harshly, because appellees, too, had been dilatory in responding to discovery. Although appellants charge that appellees took "approximately three years" to answer interrogatories that appellants propounded on July 14, 1995, they omit to mention that their interrogatories were propounded when the case was stayed. Our review of the docket shows that the stay was granted by the court on October 25, 1993, and it was not lifted until September 6, 1996. Moreover, unlike Dell, appellants never pursued a motion for sanctions. Nor did they press this point in a timely response to appellees' motion for sanctions. Instead, they raised this particular argument for the first time in their motion to alter or amend, after the case had already been dismissed.

In light of appellants' initial, unexplained disregard of outstanding interrogatories, and their subsequent inadequate explanation for their failure to answer the interrogatories, we conclude that the trial court did not abuse its discretion in imposing the "ultimate sanction" of dismissal of the claims that appellants lodged against Dell.

### III.

Alternatively, appellants contend that even if the court did not abuse its discretion in dismissing the suit as to Dell, the court erred in dismissing the complaint as to all of the other defendants. They reason that the court had no authority under the Maryland rules to impose the ultimate sanction of dismissal as to the eight other defendants, because none of them had propounded interrogatories to appellants.

In order to resolve appellants' contention, we must determine whether the sanction of dismissal was available to all of the defendants, even though only one defendant had propounded the interrogatories that appellants failed to answer. The parties have not referred us to any Maryland authority squarely addressing the circumstances we confront here. We are satisfied, however, that the Maryland rules do not permit such a windfall to the defendants who did not participate in the interrogatories.

Counsel for appellees opted to submit one set of interrogatories from only one defendant, Dell, rather than submit the same or different interrogatories from some or all of the other defendants. By propounding only one set of interrogatories on behalf of only one defendant, appellees reserved in their arsenal, for possible future use, the right to send interrogatories in the name of as many as eight other defendants.[9] Appellees explain that "it is common practice among attorneys representing multiple parties ... to serve an initial set of discovery requests to the other party from only one of their clients." That practice, according to appellees, "maximize[s] the possible available discovery to his or her clients." Nonetheless, appellees posit that because all nine defendants had an identical interest in uncovering the information sought by Dell through his interrogatories, they all were entitled to move for sanctions and to obtain a dismissal of the case because of the discovery violation.

---

**9.** Because each party is entitled to 30 interrogatories under Rule 2–421, appellees would have had the right to submit up to 270 interrogatories.

To be sure, appellees employed a strategy that might well have had its advantages. Obviously, appellees' counsel did not anticipate that appellants would fail altogether to answer Dell's interrogatories. Consequently, as events unfolded, appellees were "hoist by their own petard"; because only Dell submitted the interrogatories that appellants never answered, only he was a "discovering party" who was entitled to the ultimate sanction of dismissal.

In considering the arguments advanced here, we begin with a review of the principles that govern the interpretation of the Maryland Rules. "As we set out to interpret [a rule of civil procedure], we must apply the same standards of construction that apply to the interpretation of a statute." *Wiegmann v. State,* 118 Md.App. 317, 335–36, 702 A.2d 928 (1997), *aff'd,* 350 Md. 585, 714 A.2d 841 (1998) (citations omitted); *see State v. Harrell,* 348 Md. 69, 79, 702 A.2d 723 (1997) ("In construing a rule, we apply principles of interpretation similar to those used to construe a statute."); *State v. Montgomery,* 334 Md. 20, 24, 637 A.2d 1193 (1994) (stating that "[t]he canons and rules of construction that guide the interpretation of statutes apply equally when interpreting rules of procedure."); *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012 (1994); *New Jersey ex rel. Lennon v. Strazzella,* 331 Md. 270, 274, 627 A.2d 1055 (1993). When "the words [of the rule] are clear and unambiguous," we ascertain the meaning of the rule from its words. *Montgomery,* 334 Md. at 24, 637 A.2d 1193. In determining what the Court of Appeals intended, "we are obligated to construe the words in the text in accordance with their ordinary and natural meaning." *Wiegmann,* 118 Md.App. at 336, 702 A.2d 928. Furthermore, "we are not to embellish a provision so as to enlarge its meaning." *Id.* Rather, we strive to " ' "give the rule a reasonable interpretation in tune with logic and common sense." ' " *Holmes v. State,* 350 Md. 412, 422, 712 A.2d 554 (1998) (citations omitted); *see Fraternal Order of Police, Montgomery County Lodge No. 35 v. Mehrling,* 343 Md. 155, 174, 680 A.2d 1052 (1996); *Romm v. Flax,* 340 Md. 690, 693, 668 A.2d 1 (1995); *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994); *Rouse–*

*Fairwood Ltd. Partnership v. Supervisor of Assessments of Prince George's County,* 120 Md.App. 667, 688, 708 A.2d 19 (1998). In light of these principles, the touchstone of our analysis must be the language used in the rules. We turn to consider the rules that are at issue here.

Maryland Rules 2–432 and 2–433 are interconnected. Md. Rule 2–433 contains two separate mechanisms by which a court may levy sanctions against a recalcitrant party. First, under Rule 2–433(a), a court may impose sanctions "[u]pon a motion filed under Rule 2–432(a)," if the court "finds a failure of discovery...." By its terms, Rule 2–432(a) only applies to a "discovering party." If a party fails, *inter alia,* to answer interrogatories, Rule 2–432(a) permits "a discovering party" to "move for sanctions under Rule 2–433(a)," and the discovering party may do so "without first obtaining an order compelling discovery" under Rule 2–432(b). Second, pursuant to Rule 2–433(b), the court may impose sanctions for a failure "to obey an order compelling discovery...." A motion for an order compelling discovery is governed by Rule 2–432(b).

As a sanction, Rule 2–433(a)(3) provides, *inter alia,* for the dismissal of the action or the entry of judgment, based on the conduct of the "moving party" and the "failing party." Under Rule 2–433(b), the court "may enter such orders in regard to the failure [of discovery] as are just," including the specific sanctions set forth in Rule 2–433(a).

In this case, appellees moved for immediate sanctions pursuant to Rule 2–433(a), based on appellants' failure to answer the interrogatories. Appellees never filed a motion for an order compelling discovery under Rule 2–432(b), and therefore the court never issued an order compelling discovery. Accordingly, Rule 2–433(b) does not apply here. Rather, the dismissal order of August 14, 1997, was issued pursuant to Rule 2–433(a).

Appellees urge us to construe the phrase "discovering party" broadly, to encompass every co-party who had an identity of interest in the fruit of Dell's interrogatories. In essence, in the posture they now find themselves, appellees urge us to

analyze Dell's interrogatories as if they were propounded by the entire group of defendants. In that way, all nine appellees would be "discovering parties" under Rule 2–432(a), and thus they all would be entitled to the sanction of dismissal under Rule 2–433(a).

As we see it, appellees' suggested construction does not comport either with common sense or the plain meaning of Maryland's discovery rules. Under the circumstances attendant here, only Dell, not his co-defendants, was a discovering party; he alone propounded the discovery in issue. It follows that only Dell could have moved for sanctions or an order compelling discovery, pursuant to Rule 2–432. Because Rule 2–433 essentially incorporates Rule 2–432, it follows that only a discovering party is entitled to the sanctions permitted by Rule 2–433. That the sanction of dismissal, on occasion, may be warranted as to some but not all parties is evidenced by the text of Rule 2–433(a)(3); it says that the court may dismiss the action "or any part thereof."

 Appellees concede that the strategy they pursued in their discovery plan was to "maximize the possible available discovery." Ironically, if another defendant had timely propounded his own set of interrogatories, that particular defendant surely would have opposed any contention by the Warehimes that he was foreclosed under Rule 2–421 from doing so. In that circumstance, the co-defendant undoubtedly would have insisted that Dell did *not* represent the entire group of defendants, and that they were not all discovering parties. Each defendant was entitled under the rules to submit his own interrogatories. Merely because appellants failed to respond to Dell's interrogatories, appellees cannot abandon their posture as individual defendants and coalesce as "discovering parties" for purposes of sanctions.

Although not cited by the parties, our research reveals that in *Payne v. Exxon Corp.*, 121 F.3d 503 (9th Cir.1997), the Ninth Circuit recently held that, pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") 37, a court may dismiss a complaint against all defendants, as a sanction for the plain-

tiffs' failure to answer interrogatories propounded by only one defendant.[10] In that case, four individuals sued the Exxon Corporation and VECO, Inc. ("VECO"), seeking damages for personal injuries sustained while working on the Exxon Valdez oil spill clean-up. *Id.* at 505. After plaintiffs failed to answer Exxon's interrogatories, the trial court granted Exxon's motions to compel. When plaintiffs failed to comply, VECO and

---

**10.** F.R.Civ.P. 37 provides, in relevant part:

Failure to Make Disclosure or Cooperate in Discovery: Sanctions

(a) Motion For Order Compelling Disclosure or Discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery as follows:

\* \* \*

(2) Motion

(A) If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. . . .

(B) If . . . a party fails to answer an interrogatory submitted under Rule 33 . . . *the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request.*

\* \* \*

(b) Failure to Comply With Order.

\* \* \*

(2) Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), *the court in which the action is pending may make such orders in regard to the failure as are just,* and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) *An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;*

\* \* \*

(Emphasis added).

Exxon filed a motion dismiss the complaint, even though VECO had no interrogatory requests that were outstanding. Thereafter, the trial court dismissed the complaint as to both defendants. *Id.* at 509–10.

On appeal, plaintiffs argued that the court should not have dismissed the case as to VECO,[11] because the plaintiffs had not failed to respond to VECO's discovery request. The Ninth Circuit acknowledged that, under F.R.Civ.P. 37, VECO did not have "standing" to compel a response to interrogatories propounded by Exxon; F.R.Civ.P. 37(a)(2)(B) confers the right to compel only on "the discovering party." *Id.* at 509–10. The court noted, however, that F.R.Civ.P. 37(b)(2) authorizes a federal court to impose sanctions for failure to obey a court order compelling discovery. It also pointed out that F.R.Civ.P. 37(b)(2) does not contain language limiting the remedy to "discovering parties." Instead, the rule allows "the court in which the action is pending" to "make such orders in regard to the failure as are just," including "an order ... dismissing the action or proceeding or any part thereof...." F.R.Civ.P. 37(b)(2)(c). The court concluded that "[i]f Congress had intended to limit dismissal authority to claims against the party who propounded discovery, it would not have chosen such sweeping language [as contained in 37(b)(2) ]." *Id.* at 510.

The language of F.R.Civ.P. 37(b)(2), which the Ninth Circuit described as "sweeping," is very similar to the text of Maryland Rule 2–433(b), which governs sanctions for failure to obey a court order compelling discovery. *Payne* is distinguishable from the case *sub judice* in at least one important respect, however. Unlike *Payne,* in this case there was no court order compelling discovery; Dell never moved under Maryland Rule 2–432(b) for an order compelling discovery. Because appellants failed "to serve a response to interrogatories under Rule

---

11. Prior to the court's ruling on the motion to dismiss for failure to answer interrogatories, the court granted summary judgment in favor of VECO as to all claims except the negligence claim of one of the plaintiffs. *Id.* at 505.

2–421....", Dell was entitled to seek immediate sanctions "without first obtaining an order compelling discovery under [Rule 2–432(b)]." Pursuant to Maryland Rules 2–432(a) and 2–433(a), that is precisely the course Dell took.

Our recent decision of *Heineman v. Bright, supra,* supports our analysis. There, we affirmed the trial court's imposition of sanctions against Ms. Heineman, at 5–11, 720 A.2d 1182, but we determined that Ms. Evans, the co-party, who had not been served with interrogatories, could not "be precluded from calling witnesses simply because those witnesses are unavailable to Ms. Heineman" as a result of her discovery violation. At 12, 720 A.2d 1182. Instead, we recognized that discovery sanctions apply only to the parties involved in the discovery violation. "Certainly," we observed, "discovery sanctions against one party should not adversely affect another who has not participated in the discovery proceedings." *Id.*

The logic of *Heineman* applies with equal force here.[12] The sanctions imposed as a result of appellants' failure to answer Dell's interrogatories should have been limited to the parties involved in the discovery dispute, i.e., the Warehimes and Dell. The trial court should not have dismissed the case against eight other defendants who never submitted interrogatories. Thus, we conclude that the court improperly dismissed the suit as to all defendants other than Dell. *See* 27 *C.J.S.* Dismissal & Nonsuit § 52 (1959)(stating that "where [a] plaintiff is in default as against some [of multiple] defendants, a dismissal as to such defendants does not warrant a dismissal as to those defendants against whom plaintiff is not in default").

———

12. Our conclusion is not undermined by the Court of Appeals's statement in *Pfeiffer v. State Farm Mut. Auto. Ins. Co.,* 247 Md. 56, 230 A.2d 87 (1967), that a court may impose sanctions under former Rule 417(d) on its own motion. *Id.* at 60, 230 A.2d 87. At that time, former Rule 417(d) did not link sanctions with a motion by a "discovering party." Furthermore, *Pfeiffer* did not address the trial court's authority to dismiss a complaint as against all defendants for failure to answer the interrogatories of one defendant, which is the question here.

JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY AFFIRMED WITH RESPECT TO ORDER DISMISSING CASE AGAINST RICHARD DELL; JUDGMENT REVERSED WITH RESPECT TO ORDER DISMISSING CASE AS TO REMAINING APPELLEES. COSTS TO BE DIVIDED EQUALLY BETWEEN APPELLANTS AND ALL APPELLEES EXCEPT RICHARD DELL.