11 A.3d 355

**Jamal LOGAN**

v.

**LSP MARKETING CORPORATION, et al.**

No. 2833, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Dec. 29, 2010.

Leah K. Barron (Brian S. Brown, Saul E. Kerpelman, Saul Kerpelman & Associates, PA, on the brief), Baltimore, MD, for Appellant.

Thomas W. Hale (Michael W. Fox, Leder Law Group, LLC, on the brief), Baltimore, MD, for Appellee.

Panel: MEREDITH, WRIGHT, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

WRIGHT, J.

This appeal arises from a discovery issue in a lead paint poisoning case. On March 22, 2004, appellant, Jamal Logan, filed suit in the Circuit Court for Baltimore City against 22 defendants, including appellees, LSP Marketing Corporation and Basilio Lachica (collectively, "LSP"). On March 10, 2005, LSP filed a motion for sanctions, seeking dismissal of the action with prejudice or, in the alternative, exclusion of all but one of Logan's experts from testifying at trial. On March 29, 2005, Logan filed an opposition to the motion for sanctions, along with a request for a hearing. On April 29, 2005, without holding a hearing, the court denied LSP's request for dismiss-

al but granted the motion for sanctions by excluding all but one of Logan's experts ("2005 Order").

On May 11, 2005, Logan filed a motion to revise the court's 2005 Order. On February 8, 2006, without holding a hearing, the court denied Logan's motion, stating that "no judgment has been entered." By letter dated March 20, 2006, Logan's counsel asked the court to revise its 2005 Order. The court responded on March 27, 2006, stating that it "will take no action in response to the letter as [Logan's counsel] submitted his concerns in the form of a letter rather than a proper motion."

The case proceeded to trial on March 29, 2006. As a preliminary matter, Logan moved for reconsideration of the court's 2005 Order. After hearing from counsel, the court denied Logan's motion. Thereafter, Logan's counsel stipulated that Logan "could not proceed to trial and was unable to establish a *prima facie* case under the parameters existing as a result of the [court's 2005 Order]." Logan requested a postponement of trial, which the court denied. One of the defendants then moved for summary judgment. Finding "no dispute as to material fact," the court granted summary judgment "as to all claims asserted against all Defendants by [ ] Jamal Logan." This appeal followed.

### Questions Presented

Logan presents the four questions, which we have revised for clarity: [1]

---

**1.** In his brief, Logan presented the following issues:

I. Whether the trial court abused its discretion in ruling on LSP's dispositive Motion for Sanctions without a hearing.

II. Whether the trial court abused its discretion in ruling that Appellant's expert designations were inadequate and duplicative, and then striking these experts from testifying at trial.

III. Whether the trial court abused its discretion when it denied—for procedural reasons and without a hearing—Appellant's Motion for Reconsideration of the Motion for Sanctions.

IV. Whether the trial court erred in accepting the ruling striking Appellant's experts and then granting Appellees' Motion for

1) Did the trial court abuse its discretion when it ruled on LSP's motion for sanctions without a hearing?

2) Did the trial court abuse its discretion when it excluded all but one of Logan's experts?

3) Did the trial court denied, without a hearing, Logan's motion to revise the 2005 Order?

4) Did the trial court err or abuse its discretion when it denied Logan's motion to reconsider the 2005 Order and proceeded to grant summary judgment in favor of LSP?

Finding no error or abuse of discretion, we affirm the circuit court's judgment.

### Facts

LSP served Logan interrogatories on July 30, 2004. Interrogatory Number 22 provided:

> Identify all persons whom you expect to call as expert witnesses at trial, and for each such expert state his/her qualifications (including a list of publications written by the expert), the subject matter on which the expert is expected to testify, a summary of the grounds for each opinion, and state the terms of the expert's compensation; also, attach to your answers copies of all written reports of such experts concerning his/her findings and opinions.

Pursuant to the scheduling order, issued by the court on May 13, 2004, Logan was required to respond to "all interrogatory requests concerning the findings and opinions of experts . . . no later than 11/06/04." In addition, all discovery was to be completed "no later than 08/09/05."

On November 1, 2004, having received no response from Logan, LSP sent a letter to Logan's counsel asking for "responses to the Interrogatories and Requests for Production of Documents as soon as possible." By letter dated November 12, 2004, LSP informed Logan's counsel:

———

Summary Judgment solely because Appellant's experts would not be able to testify at trial.

[T]he findings and opinions of Plaintiff's experts were due on November 6, 2004. I have not yet received this information. Please forward the findings and opinions of any expert you intend to call at the trial of this matter to me at your earliest convenience.

I am now in an untenable position with my clients. If I do not receive Plaintiff's discovery responses and Plaintiff's experts findings and opinions by November 26, 2004, I will have no choice but to file a Motion for Sanctions.

According to LSP, Logan failed to respond. LSP attempted to contact Logan's counsel by telephone on November 24, 2004, and November 30, 2004. LSP further avers that Logan's counsel "failed to respond to these phone calls in any fashion."

On December 3, 2004, LSP filed a "motion to dismiss and/or compel" Logan's overdue discovery responses. It is undisputed that, on December 16, 2004, Logan produced answers to LSP's interrogatories. In response to Interrogatory Number 22, Logan provided a list of 16 potential experts, 10 of whom were located out-of-state, along with their addresses and the subject matter on which each expert was expected to testify. Logan's answer did not include any of the experts' qualifications, a list of publications, a summary of the grounds for each opinion, or the terms of compensation. At the end of the paragraph for each expert, Logan stated that a written report "will be provided when available" or "as soon as it becomes available."

For example, Logan listed 12 individuals as experts in "pediatric lead poisoning." For most, if not all, of those individuals, Logan stated:

[Name, address], expert in pediatric lead poisoning. [Name] is expected to testify to the extent and permanency of the minor Plaintiff's injuries due to exposure to lead paint. [Name] will also testify to the probable source of the lead exposure. [Name] will also testify that exposure to lead-based paint at all of the defendants' subject premises, as stated in the Plaintiff's complaint, was a substantial

factor in the plaintiff's injuries. A written report will be provided when available.

Logan also listed three individuals as experts in "psychology and neuropsychological evaluations of children," including Dr. Barry Hurwitz, as well as one "Vocational Consultant," Mark Lieberman. According to Logan's answer, Lieberman was

... expected to testify as to the vocational impact and loss of potential earning capacity of lead paint poisoning on the Plaintiff(s). He will base his opinions on a review of the medical records, school records, other expert reports and depositions. In some instances Mr. Lieberman will meet with the Plaintiff(s) and/or family members. We will provide a copy of the report as soon as it becomes available.

On December 20, 2004, Logan filed an opposition to LSP's motion to dismiss and/or compel, arguing that answers had been provided, thus rendering LSP's motion moot. On December 28, 2004, LSP filed a reply to Logan's opposition, wherein it argued that Logan "failed to provide his experts' reports and/or expert findings and opinions in answer to ... Interrogatory Number 22 and within the deadline set forth in the Scheduling Order." Specifically, LSP stated that Logan's answer to Interrogatory Number 22 failed to state "the substance of the findings and opinions to which the expert[s] [are] expected to testify, and a summary of the grounds for each opinion." Thus, LSP sought dismissal of Logan's complaint or, in the alternative, "an Order compelling Plaintiff to provide Defendants with executed Answers to Interrogatories, ... and to provide his experts' reports and/or the substance of the findings and opinions to which Plaintiff's experts are expected to testify, and a summary of the grounds for each opinion within 10 days."

On February 3, 2005, the court signed an order granting LSP's motion to compel, requiring Logan to "provide his experts' findings and opinions pursuant to Maryland Rule 2–402(f) [2] and/or reports within 20 days (twenty) from the date

---

2. This Rule is now codified at Maryland Rule 2–402(g), and states, in pertinent part:

on which this Order is signed." On February 23, 2005, Logan produced revised and supplemental answers to LSP's interrogatories. In response to Interrogatory Number 22, Logan deleted two of the previously named experts, including Dr. Hurwitz, whom LSP found to be "the only expert properly designated under Maryland Rule 2–402(f)." Again, Logan provided the subject matter to which each expert would testify, but failed to include the substance of the experts' findings. For 13 of the 14 experts listed, Logan again stated that a written report "will be provided when available."

As noted, on March 10, 2005, LSP filed a motion for sanctions, seeking dismissal of the action with prejudice or, in the alternative, exclusion of all of Logan's experts, except Dr. Hurwitz. In part, LSP argued:

> To date, Plaintiff has failed to produce any information on the substance of the findings and opinions to which his fourteen identified experts are expected to testify, and failed to provide a summary of the grounds for each opinion of these other experts, which is in direct violation of the Scheduling Order and [the court]'s February 3, 2005 Order. Instead of producing the experts' findings and opinions specific to Jamal Logan, Plaintiff's supplemental expert

---

(g) *Trial preparation—Experts.—*

(1) *Expected to be called at trial.*

(A) *Generally.—*A party by interrogatories may require any other party to identify each person, other than a party, whom the other party expects to call as an expert witness at trial; to state the subject matter on which the expert is expected to testify; to state the substance of the findings and the opinions to which the expert is expected to testify and a summary of the grounds for each opinion; and to produce any written report made by the expert concerning those findings and opinions. A party also may take the deposition of the expert.

(B) *Additional disclosure with respect to experts retained in anticipation of litigation or for trial.—*

In addition to the discovery permitted under subsection (g)(1)(A) of this Rule, a party by interrogatories may require the other party to summarize the qualifications of a person expected to be called as an expert witness at trial and whose findings and opinions were acquired or obtained in anticipation of litigation or for trial, to produce any available list of publications written by that expert, and to state the terms of the expert's compensation.

designations make the exact same broad reservations on reports and provide the same boilerplate explanations for the opinions and findings of his experts.

On March 29, 2005, Logan filed an opposition to the motion for sanctions, along with a request for a hearing. Logan stated that, contrary to LSP's allegations, the answers provided "fully comply with the requirements of the Maryland Rules, and do state the 'substance of the finding and opinions to which the experts are expected to testify.'" Logan added:

[N]othing in the Maryland Rules requires that a report be provided if one has not been produced. If defendants want to learn more than disclosed in the designations, all defendants need to do is schedule the depositions of the listed experts.

On April 29, 2005, without holding a hearing, the court denied LSP's request for dismissal but granted the motion for sanctions by excluding all but one of Logan's experts. Relying on Maryland Rule 2–402(f)(1)(A), the court explained in its order:

... Except as to Dr. Barry Hurwitz, plaintiff has failed to provide "the substance of the findings and the opinions to which the expert is expected to testify and a summary of the grounds for each opinion," and therefore, plaintiff has failed to comply with his discovery obligations as to each of the other identified experts in Plaintiff's Answer to Defendants' Interrogatory No. 22 and Plaintiff's Supplemental Answer to Defendants' Interrogatory No. 22.

In addition, Plaintiff's answers and supplemental answers to the interrogatories clearly show that the expert testimony that would be provided by each of the experts being excluded pursuant to this order, except Mark Lieberman, would be duplicative of the testimony provided by Dr. Hurwitz, whose designation is being permitted.

On May 11, 2005, Logan filed a motion to revise the court's 2005 Order which was denied. By letter dated March 20, 2006, Logan's counsel asked the court to revise its 2005 Order, but the court declined to take action. The case proceeded to

trial on March 29, 2006, at which time Logan, for a third time, requested reconsideration of the court's 2005 Order. After hearing from counsel, the court denied Logan's motion based on the procedural posture leading up to trial.

Logan's counsel then stated that he could not "present a *prima facie* case" but would be willing to proceed and pick a jury to "protect [his] client's interest." In other words, Logan's counsel "object[ed] to the [c]ourt considering any motion for summary judgment, even though at the same time [was] willing to stipulate that under the current state of the rulings ... [he] cannot make a *prima facie* case to go forward w[h]ether it be a court trial or a jury trial." After considering the parties' arguments, the court ruled, by order dated April 28, 2006, that "pursuant to the stipulations entered into by Counsel for Plaintiff, there exists no dispute as to material fact, and Summary Judgment is appropriate as to all claims asserted against all Defendants by Plaintiff Jamal Logan."

### Discussion

### I. Grant of Motion for Sanctions without a Hearing

Logan first argues that the trial court abused its discretion when it ruled on his motion for sanctions without holding a hearing. Relying on Maryland Rule 2–311(f), Logan contends that the court "was required to hold a hearing ... since the ruling on this motion ultimately adjudicated [his] claims." Logan's reliance on Rule 2–311(f), however, is misplaced. As we will explain, the motions court did not abuse its discretion.

Maryland Rule 2–311(f), in relevant part, states:

(f) *Hearing—Other motions.*—A party desiring a hearing on a motion ... shall request the hearing in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, *the court shall determine in each case whether a hearing will be held, but the court may not render a decision that is dispositive of a*

*claim or defense without a hearing if one was requested* as provided in this section.

(Emphasis added).

 "In *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 598 A.2d 794 (1991), this Court held that Md. Rule 2–311(f) requires a trial judge to hold a hearing only if its decision would be dispositive of a claim or defense." *Shelton v. Kirson*, 119 Md.App. 325, 329, 705 A.2d 25 (1998). Further, we "explained that the words 'claim' and 'defense' were to be narrowly construed, and 'that these terms are [not] to include the arguments made in order to obtain or thwart collateral litigation matters, like those contained in motions for discovery sanctions....'" *Id.* at 329–30, 705 A.2d 25 (quoting *Fowler*, 89 Md.App. at 485, 598 A.2d 794) (emphasis and additional citations omitted). The Court added: "For a decision to be deemed dispositive of a claim or defense within the contemplation of Rule 2–311(f), it must actually and formally dispose of the claim or defense. It is not enough to argue that it is the functional equivalent of a dispositive decision or that it lays the inevitable predicate for such a decision." *Id.* at 330, 705 A.2d 25.

This case mirrored *Shelton*. In *Shelton*, "the appellee moved to preclude testimony by the late-named experts because of inexcusable non-compliance with the time limits set for discovery." *Id.* at 327–38, 705 A.2d 25. The circuit court granted the motion and, in a later proceeding, granted summary judgment in favor of appellee based on the lack of sufficient evidence as a result of the rulings with respect to discovery. *Id.* On appeal, we affirmed the circuit court's judgment, and stated:

> The dispositive action in this case was the granting of summary judgment in favor of the appellee.... Earlier discovery rulings have present pertinence only to the extent to which they may have affected the granting of summary judgment. The discovery order precluding the medical experts demonstrably had no such effect. The testimony of the experts, at best, would have established that the minor

plaintiff suffered from lead poisoning. The absence of any proof in that regard was not the basis for the granting of summary judgment....

*Id.* at 328, 705 A.2d 25.

■ Likewise, here, the dispositive action was the granting of summary judgment in favor of LSP. Although the grant of summary judgment may have resulted from earlier discovery rulings, the court did not directly dismiss the case when it granted LSP's motion for sanctions. As such, the court did not abuse its discretion by ruling on the motion without holding a hearing.

Logan compares this case to *Karl v. Blue Cross & Blue Shield,* 100 Md.App. 743, 642 A.2d 903 (1994), but that case is distinguishable. In *Shelton,* we summarized the proceedings in *Karl* as follows:

In *Karl,* the appellee had filed two motions for sanctions against the appellant for failure to respond timely to discovery requests. In the second motion for sanctions, the one at issue on appeal, the appellee sought the sanction of dismissal of the complaint. Despite the appellee's request for a hearing, the trial court granted appellee's motion to dismiss without holding a hearing on the motion. The appellant appealed. This Court, in vacating the trial court's judgment, focused on the fact that, although the appellee had filed a motion for sanctions, one of the sanctions requested was dismissal of the complaint. As we stated, "although this motion was initiated under the Discovery Rule, it included a motion to dismiss, which is one, if granted, would be dispositive of the case." [*Karl, supra,* 100 Md.App.] at 747 [642 A.2d 903] (internal quotes omitted). Thus, under Md. Rule 2–311(f), the trial court erred in not holding a hearing prior to granting the motion to dismiss.

*Shelton, supra,* 119 Md.App. at 330, 705 A.2d 25.

In this case, although LSP filed a motion to dismiss, along with its motion for sanctions, the court denied the motion to dismiss. Instead, as LSP notes, the court granted the motion for sanctions and allowed the case to proceed to trial. This

differs from *Karl,* where the motions court dismissed the case without holding a hearing. *See Karl,* 100 Md.App. at 744–45, 642 A.2d 903. Thus, we conclude that there was no abuse of discretion.

## II. The 2005 Order

Next, as noted, Logan argues that "the trial court abused its discretion in ruling that [his] expert designations were inadequate and duplicative, and then striking these experts from testifying at trial." According to Logan, his answers to LSP's interrogatories "fully complied with the requirements of Maryland Rule 2–402(f)(1)(A)." We disagree.

■ Under former Maryland Rule 2–402(f)(1)(A), now codified at Rule 2–402(g)(1)(A), "[a] party by interrogatories may require any other party to identify each person . . . whom the other party expects to call as an expert witness at trial; . . . to state the substance of the findings and the opinions to which the expert is expected to testify and a summary of the grounds for each opinion; and to produce any written report made by the expert concerning those findings and opinions." In *Blades v. Woods,* 107 Md.App. 178, 183, 667 A.2d 917 (1995), we stated:

> "One of the fundamental and principal objectives [of discovery] is to require the disclosure of facts by a party litigant to all of his adversaries . . . If all of the parties have knowledge of all of the relevant, pertinent and non-privileged facts, or the knowledge of the existence or whereabouts of such facts, the parties should be able to properly prepare their claims and defenses, thereby advancing the sound and expeditious administration of justice."

(Quoting *Balt. Transit Co. v. Mezzanotti,* 227 Md. 8, 13, 174 A.2d 768 (1961)) (emphasis omitted).

■ More recently, we discussed the Maryland Rules of Discovery in *Gallagher Evelius & Jones, LLP v. Joppa Drive–Thru, Inc.,* 195 Md.App. 583, 594–98, 7 A.3d 160 (2010). In that case, we stated:

The discovery scheme initially requires broad and comprehensive disclosures, then "provid[es] a mechanism for addressing disputes concerning the necessity of complying with a disclosure request and the adequacy of any challenged disclosure," and, finally, when required, "prescrib[es] sanctions to be imposed when a party fails to comply, either by not responding at all or responding inadequately." *Food Lion, Inc. v. McNeill*, 393 Md. 715, 733–34 [904 A.2d 464] (2006) (citing Md. Rules 2–402, 2–403, 2–432, 2–433, and 2–504). Sanctions are required to ensure that a noncomplying or defaulting party does not benefit from that party's noncompliance or default. *Id.* at 734–35 [904 A.2d 464].

When there is a claim of failure of discovery, the circuit court has broad discretion to fashion a remedy based on a party's failure to abide by the rules of discovery. *Warehime v. Dell*, 124 Md.App. 31, 43 [720 A.2d 1196] (1998). In imposing sanctions for discovery failures, a trial court has " 'considerable latitude.' " *Id.* (quoting *Miller v. Talbott*, 239 Md. 382, 387 [211 A.2d 741] (1965)).

\* \* \*

▄▄ Once a trial court resolves a discovery dispute, our review of that resolution is "quite narrow; appellate courts are reluctant to second-guess the decision of a trial judge to impose sanctions for a failure of discovery. Accordingly, we may not reverse unless we find an abuse of discretion." *Warehime*, 124 Md.App. at 44 [720 A.2d 1196].

*Id.* at 596–97, 7 A.3d 160.

This case is similar to *Rodriguez v. Clarke*, 400 Md. 39, 926 A.2d 736 (2007). In *Rodriguez*, the respondent failed "to make good-faith efforts to provide access to information about their expert witnesses, … [and failed] to make good faith attempts to sincerely resolve the discovery dispute." *Id.* at 65, 926 A.2d 736. On appeal, the Court of Appeals noted that the respondents provided "sparse preliminary expert witness designation" because they did not state "the substance of [the experts'] findings and opinions, nor a summary of the grounds for each opinion, [they] also did not produce any written

report made by the experts concerning their findings and opinions, as required by Rule 2–402(f)(1)." *Id.* The *Rodriguez* Court also mentioned that "[s]ix of the ten expert witnesses identified by the [respondents] were out-of-state witnesses," and that their deposition "can be an onerous and costly process and is one which easily can be obviated through good faith efforts to communicate available deposition dates." *Id.* at 68–69, 926 A.2d 736.

Similarly, in this case, Logan failed to make good-faith efforts to provide access to information about their expert witnesses. Based on the scheduling order printed by the court on May 13, 2004, Logan was required to respond to "all interrogatory requests concerning the findings and opinions of experts ... no later than 11/06/04." On November 1, 2004, having received no response from Logan, LSP sent a letter to Logan's counsel asking for "responses to the Interrogatories and Requests for Production of Documents as soon as possible." By letter dated November 12, 2004, LSP informed Logan's counsel that the information still had not been provided. Logan, however, failed to respond, prompting LSP to call Logan's counsel on November 24, 2004, and November 30, 2004. After receiving no response, LSP filed a motion to dismiss and/or compel.

On December 16, 2004, one month and ten days after the court-imposed deadline, Logan produced answers to LSP's interrogatories. Logan's answers, however, did not comply with Rule 2–402 because he failed to include the *substance* of the experts' findings and opinions, as well as a summary of the *grounds* for each expert's opinion. For example, Logan listed Lieberman as an expert who would testify "as to the vocational impact and loss of potential earning capacity of lead paint poisoning on the Plaintiff(s)." Although Logan stated that Lieberman would "base his opinions on a review of the medical records, school records, other expert reports and depositions," Logan did not state *how* Lieberman believed his earning capacity would be affected.

In addition, Logan listed 12 individuals, 10 of whom were located out-of-state, as experts in pediatric lead poisoning, who would "testify to the extent and permanency of the minor Plaintiff's injuries due to exposure to lead paint." These answers failed to disclose, however, *what* each expert would opine as to the extent and permanency of the injuries, which might range from 0% to 100%. Logan stated that all 12 experts were expected to "testify to the probable source of the lead exposure," but he did not include *what* each expert would opine the probable source was, and *why* the expert expressed this belief. Moreover, the experts were to "testify that exposure to lead-based paint at all of the defendants' subject premises ... was a substantial factor in the plaintiff's injuries," yet Logan did not state the *reasons* for their findings. And, like the respondents in *Rodriguez,* Logan stated at the end of each expert designation that a written report "will be provided when available" or "as soon as it becomes available." Based upon Logan's "boilerplate" expert designations, it was reasonable for the court to infer that the excluded experts' testimonies would be duplicative of Dr. Hurwitz's.

For these reasons, we agree with the circuit court that Logan's answers were inadequate.[3] As the Court of Appeals

---

**3.** This case is unlike *Maddox v. Stone,* 174 Md.App. 489, 499, 921 A.2d 912 (2007) (holding that, where there has been "substantial compliance" with the deadlines in a scheduling order, it was an abuse of discretion for the trial court to exclude the witness). In *Maddox,* by the time the circuit court ruled that the plaintiff could not call a certain expert witness for the sole reason that the witness was not disclosed within the deadline set forth in a scheduling order, the plaintiff had provided opposing counsel with a full written report disclosing the opinions of the expert, and, after the report containing the opinions had been provided, opposing counsel had completed a deposition of the expert prior to the scheduling order's deadline for completion of discovery. *Id.* at 500, 921 A.2d 912.

In contrast to the substantial compliance with the scheduling order and full compliance with the discovery requests in *Maddox,* Logan never provided to LSP the substance of the experts' opinions and grounds therefor. Unlike the situation in *Maddox,* the circuit court in this case was faced with Logan's failure to provide discovery as to the proposed experts' opinions even after being ordered to "provide his experts' findings and opinions pursuant to Maryland Rule 2–402(f)

stated in *Rodriguez,* sanctions are warranted where a party provides "sparse expert witness designation, elusive answers to interrogatories, and fail[s] to communicate." *Id.* at 69–70, 926 A.2d 736. Therefore, we conclude that the court acted properly in imposing sanctions.

### III. Denial of Motion to Revise

 Logan next argues that the trial court abused its discretion by not granting his "Motion to Revise Pursuant to Maryland Rule 2–535 or [his] March 20, 2006 letter requesting reconsideration." Logan contends that he should have been granted a hearing and the court "should have reconsidered its [2005] Order." Again, we disagree.

Maryland Rule 2–535 states, in pertinent part:

(a) *Generally.*—On motion of any party filed within 30 days after *entry of judgment,* the court may exercise revisory power and control *over the judgment* and, if the action was tried before the court, may take any action that it could have taken under Rule 2–534. . . .

(Emphasis added). Rule 2–535, therefore, only applies to judgments.

In *Mullaney v. Aude,* 126 Md.App. 639, 652, 730 A.2d 759 (1999), we stated:

"Like the imposition of costs, attorney's fees, and contempt sanctions, *the imposition of a . . . sanction is not a judgment on the merits of an action.* Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated."

(Quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 396, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)) (emphasis added); *accord Litty v. Becker,* 104 Md.App. 370, 375–76, 656 A.2d 365 (1995).

---

and/or reports within 20 days" of February 3, 2005, to bring his answer to compliance.

Because the imposition of a sanction is not a judgment, we conclude that the circuit court neither erred nor abused its discretion when it denied Logan's motion and stated that "no judgment has been entered." Likewise, the court acted properly when it declined to take action in response to Logan's letter requesting reconsideration of the 2005 Order.

## IV. Denial of Motion to Reconsider and Grant of Summary Judgment

Finally, Logan argues that the trial court erred in granting LSP's motion for summary judgment. Specifically, Logan avers that the ruling should be reversed because the court based its decision on the previous "incorrect ruling striking [his] experts." Meanwhile, LSP argues that grant of summary judgment was proper because Logan "conceded he could not go forward with his *prima facie* case." We agree with LSP.

When a party moves for summary judgment, the circuit court may grant that motion if it determines that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(f); *see also Zurich Am. Ins. Co. v. Uninsured Employers' Fund,* 196 Md.App. 181, 190, 9 A.3d 80 (2010) (citations omitted). Therefore, when appellate courts review a grant of summary judgment, " 'we must make the threshold determination as to whether a genuine dispute of material fact exists, and only where such dispute is absent will we proceed to review determinations of law.' " *Stachowski v. Sysco Food Servs. of Balt., Inc.,* 402 Md. 506, 515–16, 937 A.2d 195 (2007) (quoting *Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18 (2003)). "The standard applied by th[is] Court is not whether the trial court was clearly erroneous but whether the trial court was legally correct." *Zurich Am. Ins. Co., supra,* 196 Md.App. at 191, 9 A.3d 80 (citations omitted).

At trial, Logan, for a third time, requested reconsideration of the court's 2005 Order. After hearing from counsel, the court denied Logan's motion, based on the procedural posture

leading up to trial and the sanctions imposed upon Logan. Logan's counsel then stated that he could not "present a *prima facie* case" but would be willing to proceed and pick a jury to "protect [his] client's interest." Following a lengthy discussion, the court determined that Logan "object[ed] to the [c]ourt considering any motion for summary judgment, even though at the same time [was] willing to stipulate that under the current state of the rulings ... [he] cannot make a *prima facie* case to go forward w[h]ether it be a court trial or a jury trial."

As previously explained, the court acted properly in granting LSP's motion for sanctions. It then follows that the court also acted properly in imposing those sanctions during trial. Because Logan conceded that he could not "present a *prima facie* case," we conclude that the court did not err in finding that, "pursuant to the stipulations entered into by Counsel for Plaintiff, there exists no dispute as to material fact and Summary Judgment is appropriate as to all claims asserted against all Defendants by Plaintiff Jamal Logan."

Thus, for all of the foregoing reasons, we affirm the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**