45 A.3d 861

Daniel C. HAYES

v.

Darien J. PRATCHETT.

No. 2751, Sept. Term, 2010.

Court of Special Appeals of Maryland.

June 5, 2012.

**460**

Erick D. Frye, Upper Marlboro, MD, for Appellant.

Christopher R. Dunn (John W. Leonard, DeCaro, Doran, Siciliano, Gallacher, & DeBlasis, LLP), for Appellee.

Panel: KRAUSER, C.J., WRIGHT, BERGER, JJ.

WRIGHT, J.

On July 26, 2006, the appellant, Daniel C. Hayes, and the appellee, Darien J. Pratchett, were involved in an automobile accident in the parking lot of BJ's Wholesale Club located on Ballpark Road in Bowie, Maryland. Hayes was an employee of BJ's Wholesale Club Tire Center, and Pratchett was his supervisor in the tire center. On August 15, 2006, Hayes signed a release agreement resolving any claims that he may have had against BJ's Wholesale Club, Inc. arising from the accident. On February 11, 2009, Hayes filed a complaint in the Circuit Court for Prince George's County asserting a single count of negligence against Pratchett. On October 22, 2010, Pratchett filed a motion for summary judgment arguing that Hayes was precluded from bringing a civil action against Pratchett by the Maryland's Workers' Compensation Statute. Specifically, Pratchett asserted that, as a supervisor performing a nondelegable duty of the employer in the course of his employment, he was immune from civil suit pursuant to Md. Code (1991, 2008 Repl.Vol.), § 9–509 of the Labor & Employment Article ("LE")[1]. On January 10, 2011, the circuit court

---

1. LE § 9–509 provides as follows:

granted summary judgment in favor of Pratchett. On the same day, Hayes filed this appeal. He presents a single issue for us to decide:

Whether the circuit court erred in finding, as a matter of law, that the exclusive remedy available to appellant was through the Workers' Compensation Statute?

## Facts

In proceedings before the circuit court, the parties agreed to present a joint statement of facts, which provided as follows:

This case arises out of an automobile accident that took place in the parking lot of BJ's Wholesale Club, located on Ballpark Road in Bowie, Maryland, on July 26, 2006. At all relevant times, ... Hayes[ ] was a BJ's Wholesale Club employee who was leaving the BJ's parking lot, and ... Pratchett[ ] was a BJ's Wholesale Club supervisor in the

---

(a) *Employers.*—Except as otherwise provided in this title, the liability of an employer under this title is exclusive.

(b) *Covered employees and dependents.*—Except as otherwise provided in this title, the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right of action against any person.

(c) *Exception—Failure to secure compensation.*—(1) If an employer fails to secure compensation in accordance with this title, a covered employee who has sustained an accidental personal injury, compensable hernia, or occupational disease or, in case of death, the personal representative of the covered employee may:

(i) bring a claim for compensation under this title; or

(ii) bring an action for damages.

(2) In an action of a covered employee or personal representative under this subsection, an employer may not plead as a defense that:

(i) the covered employee assumed the risk of employment;

(ii) the covered employee was contributorily negligent; or

(iii) the negligence of a fellow servant caused the accidental personal injury, compensable hernia, or occupational disease.

(d) *Exception—Deliberate act.*—If a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee, the covered employee or, in the case of death, a surviving spouse, child, or dependent of the covered employee may:

(1) bring a claim for compensation under this title; or

(2) bring an action for damages against the employer.

tire service center. While ... Pratchett supervised ... Hayes during their work together in the tire center, at the time of the accident in question, [Pratchett] was neither supervising nor directing [Hayes] as [Hayes's] shift had ended for that particular day.

At approximately 1:40 PM on the day in question, [Pratchett], while working, was in the process of moving a customer's 1998 Honda Accord from a parking space into the tire service center. Due to the nature of the parking space and surrounding vehicles, [Pratchett's] vision to the right of the vehicle was obstructed. Accordingly, [Pratchett] sounded the car's horn to alert those nearby, and then proceeded to reverse the vehicle out of the space. [Hayes], proceeding through the same area of the parking lot in his own 2002 Ford Taurus, collided with the vehicle operated by [Pratchett], and both automobiles sustained damage.

On December 22, 2010, the circuit court held a hearing on Pratchett's motion for summary judgment. At the end of the hearing, the court granted Pratchett's motion concluding that there was no genuine dispute of material fact and "that on the basis of the facts of this case ... there is a nondelegable duty that the employer has and ... the Plaintiff['s] exclusive remedy here is under the Maryland Workers' Compensation Statute." Important to the court's decision was that the accident took place in the BJ's parking lot, and that the supervisor was driving a customer's car, not his own.

## Standard of Review

In granting a motion for summary judgment, the circuit court must determine "that there are no genuine disputes as to any material fact and that the moving party is entitled to judgment as a matter of law." *Laing v. Volkswagen of Am., Inc.,* 180 Md.App. 136, 152, 949 A.2d 26 (2008) (citing Md. Rule 2–501). "In reviewing the grant of a motion for summary judgment, appellate courts focus on whether the trial court's grant of the motion was legally correct." *Id.* at 152–53, 949 A.2d 26 (citation omitted). *See also Logan v. LSP Marketing Corp.,* 196 Md.App. 684, 703, 11 A.3d 355 (2010), *cert. denied,* 418 Md. 588, 16 A.3d 978 (2011).

## Discussion

Hayes argues that he is entitled to a reversal because the duty to safely operate a motor vehicle is personal to each driver and not a nondelegable duty of the employer. He asserts that as the facts demonstrated, Pratchett was operating a motor vehicle at the time of the accident and was not acting as a supervisor or in a supervisory capacity with regard to Hayes. According to Hayes, because his complaint alleged breach of due care and not negligent entrustment or failure to provide a safe environment, it is irrelevant that Pratchett was driving a customer's vehicle, as Pratchett's direct act of negligence caused the collision.

Pratchett responds that, under the particular facts and circumstances of this case, he was responsible for providing a safe work environment for his employees at the time of the underlying accident. According to Pratchett, the safety of the workplace was a nondelegable duty on the part of each party's employer, BJ's Wholesale Club. In other words, if Pratchett was negligent in moving a customer's vehicle as alleged, then he was negligent in the performance of the employer's nondelegable duty to maintain a safe work environment for Hayes and other subordinate employees. Pratchett contends that, because routine work assignments and supervision are aspects of the nondelegable duty of providing employees a safe place to work, he is entitled to immunity as he was working within the scope of his employment at the time of the accident.

For the reasons that follow, we conclude that the circuit court erred in determining that Hayes's sole remedy for his injuries arising from the accident with Pratchett was through the Workers' Compensation Statute.

"The Maryland Workers' Compensation Statute was enacted in 1914 to compensate employees who were injured in the course of their employment." *Brady v. Ralph Parsons Co.*, 308 Md. 486, 496, 520 A.2d 717 (1987). The Statute "embodies a comprehensive scheme to withdraw all phases of extrahazardous employments from private controversy and to pro-

vide sure and certain relief for injured [workers], their families and dependents regardless of questions of fault." *Hastings v. Mechalske,* 336 Md. 663, 672, 650 A.2d 274 (1994) (citation omitted). It was intended to replace the common law tort system, which had previously been an injured employee's sole means of obtaining compensation for work related injuries, and had proven to be inadequate for this purpose. *Brady,* 308 Md. at 496, 520 A.2d 717. Moreover, the Statute was intended to strike a balance between the interests of workers and employees. *Id.* As the Court of Appeals noted in *Johnson v. Mountaire Farms of Delmarva, Inc.,* 305 Md. 246, 250, 503 A.2d 708 (1986):

> Workers lost their right to sue their employers for negligence but gained the right to quick and certain compensation for injuries sustained during the course of their employment, regardless of fault. *See Wood v. Aetna Casualty & Surety Co.,* 260 Md. 651, 660–61, 273 A.2d 125, 131 (1971); *Victory Sparkler Co. [v. Francks,]* 147 Md. [368, 376–77, 128 A. 635, 638 (1925).]* In return, employers lost their defenses of contributory negligence, assumption of risk, and fellow servant rule but gained the advantage of having their liability limited. *Wood, supra,* 260 Md. at 660–61, 273 A.2d at 131; *Victory Sparkler Co., supra,* 147 Md. at 376–77, 128 A. at 638; *see also* 2A A. Larson, *The Law of Workmen's Compensation* § 65.11 (1983).

■ Maryland's Workers' Compensation Statute requires that employers of covered employees provide compensation for accidental personal injuries sustained by the covered employee regardless of the employer's fault. LE § 9–501.[2] The Statute further states that "the compensation provided under this title to a covered employee or the dependents of a covered

---

2. LE § 9–501. **Accidental personal injury.**

(a) *In general.* Except as otherwise provided, each employer of a covered employee shall provide compensation in accordance with this title to:

(1) the covered employee for an accidental personal injury sustained by the covered employee: or

employee is in place of any right of action against any person."
LE § 9–509(b).³ However, where a third party is responsible
for the covered employee's injury, the covered employee may
either make a claim under the statute or bring an action for
damages against the third party. LE § 9–901.⁴ As the Court
of Appeals stated in *Hastings*, 336 Md. at 673, 650 A.2d 274, a
covered employee's ability to sue a third party for damages
arising from the employee's injury includes coemployees of the
injured party.

■ Although LE § 9–901 does not preclude tort actions
between coemployees, it does exclude an action in tort by an
employee against his employer. *Hill v. Knapp*, 396 Md. 700,
711, 914 A.2d 1193 (2007); *Suburban Hosp. v. Kirson*, 362 Md.
140, 145–46, 763 A.2d 185 (2000); *Athas v. Hill*, 300 Md. 133,
137, 476 A.2d 710 (1984); *Hutzell v. Boyer*, 252 Md. 227, 232,

---

(2) the dependents of the covered employee for death of the covered
employee:
(i) resulting from an accidental personal injury sustained by the
covered employee; and
(ii) occurring within 7 years after the date of the accidental personal
injury.
(b) *Employer liable regardless of fault.* An employer is liable to
provide compensation in accordance with subsection (a) of this
section, regardless of fault as to a cause of the accidental personal
injury.

3. LE § 9–509 includes two exceptions to the general rule that covered
employees are limited to recovering under the statute. First, covered
employees may bring a cause of action against the employer where the
employer fails to secure compensation in accordance with the statute,
and second, a covered employee may bring a cause of action against an
employer if the employer deliberately intended to injure or kill the
employee. Neither exception is applicable here.

4. LE § 9–901. **Choice of proceeding against third party or employer.**
When a person other than an employer is liable for the injury or
death of a covered employee for which compensation is payable
under this title, the covered employee or, in case of death, the
personal representative or dependents of the covered employee may:
(1) file a claim for compensation against the employer under this
title; or
(2) bring an action for damages against the person liable for the
injury or death or, in case of joint tort feasors, against each joint tort
feasor.

249 A.2d 449 (1969). This immunity from suit can extend to supervisory coemployees when the supervisor is performing a nondelegable duty of the employer:

[A] supervisory coemployee performing a nondelegable duty of the employer—such as providing a safe place to work— does not thereby assume a personal duty toward his or her fellow employees. [*Athas v. Hill*, 300 Md. 133, 148, 476 A.2d 710 (1984) ]. Such an employee is entitled to the benefit of the employer's immunity, even though he or she negligently performed the employer's duty.[5]

*Hastings*, 336 Md. at 673, 650 A.2d 274. *Kruse v. Schieve*, 61 Wis.2d 421, 213 N.W.2d 64 (1973),[6] which the *Athas* and *Hastings* Courts cited, is instructive:

---

5. The *Athas* Court also noted:

It is stated in 2A A. Larson, *The Law of Workmen's Compensation* § 72.11, that as of 1983, only eleven states, including Maryland, extended immunity from liability for negligence to the employer alone and thus permitted suit against coemployees. It is interesting to note that, as Larson puts it, "A strong tide toward coemployee immunity has been running. As recently as 1974, a majority of states permitted suits against coemployees." Several of the courts which have determined that coemployees are subject to tort liability have extended this rationale to corporate officers and supervisory employees. Larson states that, "The clearest case for such liability is that in which the corporate officer is acting in his capacity as an employee—even a managerial employee—and in which the conduct involved is merely the kind of negligence or other misconduct that would normally make any coemployee liable." Other cases turn on "the extent to which the defendant is in effect the alter ego of the corporation, or is at least acting as an agent or representative of the corporation, or being charged with violation of duties that are not his personal duties, but the nondelegable duties of the corporation." Further, Larson notes that, "Suit is also barred if the duty allegedly violated was a nondelegable duty of the corporation, such as the duty to provide a safe place to work—as distinguished from the duty of care owed by one employee to another."

300 Md. at 140–41 (internal citations omitted). The current edition of Larson's Workers' Compensation Law states that "[e]xceptions to coemployee immunity for intentional wrongs now exist in 34 states. Wyoming, Minnesota, Iowa and Florida have an exception for gross negligence." Lex K. Larson, *Workers' Compensation Law* § 111.03(6) (2011).

6. A closer look at the Wisconsin case reveals that in *Kruse*, the appellant, Penny Lee Kruse, a machine operator, suffered serious injuries

"The duty of proper supervision is a duty owed by a corporate officer or supervisory employee to the employer, not to a fellow employee. Under what circumstances can a duty be owed to a fellow employee additional to and different from the duty of proper supervision that is owed to the employer by a corporate officer or supervisory employee? Clearly something extra is needed over and beyond the duty owed the employer. In *Hoeverman* [*v. Feldman*, 220 Wis. 557, 265 N.W. 580 (1936) ], that added element was provided by the company president directing a particular employee to operate a particular machine in a particular manner. In *Wasley* [*v. Kosmatka*, 50 Wis.2d 738, 184 N.W.2d 821 (1971) ], that additional factor was provided by the corporate officer actually driving the truck which caused the fatal injury. In both cases we deal not with any general duty or responsibility owed the employer but an affirmative act which increased the risk of injury. In both cases the officer's or supervisory employee's affirmative act of negligence went beyond the scope of the duty of the employer, which is nondelegable to 'provide his employees with a safe place to work, *i.e.*, safe conditions.' If the corporate officer, in *Hoeverman*, had not personally directed the particular operation to be done in a particular manner, there would have been no basis for holding that he had become a coemployee and owed a common-law duty to a fellow employee under the circumstances. If the corporate officer, in *Wasley*, had not driven the truck that caused the injury, there would have been in that case no factual basis for finding him to have the status and duty of a fellow employee. If the company president and supervisory employee, in *Pitrowski* [*v. Taylor*, 55 Wis.2d 615, 201 N.W.2d 52 (1972) ], had not been directly engaged in the truck loading that

---

when her left hand became caught in the roller of a textile carting machine that she was cleaning. 213 N.W.2d at 64. Kruse received workers' compensation benefits for the injury from the insurer of Monteray Mills, Inc. *Id.* She filed an action against Donald M. Schieve "in his capacity as a coemployee and as the person in charge of production and control of the employment." *Id.*

caused the injury, we see in that record no basis for holding either to have been coemployees with a common-law duty owned to the worker injured."

*Athas,* 300 Md. at 145–46, 476 A.2d 710 (quoting *Kruse,* 213 N.W.2d at 67–68).

In *Athas,* the Court of Appeals thoroughly discussed the liability of a supervisory coemployee under the Workers' Compensation Statute. There, Athas, a restaurant employee at a country club, was attacked with a knife by a coemployee. *Athas,* 300 Md. at 134, 476 A.2d 710. Athas sued the supervisors at the country club asserting that they negligently discharged their duty to provide a safe place to work by hiring Athas's attacker despite knowing of the attacker's violent disposition. *Id.* at 135, 476 A.2d 710. The Court of Appeals held that the Workers' Compensation Statute prevented Athas from recovering from the supervisors because the supervisors were performing the nondelegable duty of their employer to provide a safe place to work. *Id.* at 149, 476 A.2d 710. In reaching this conclusion, the Court stated as follows:

Under Maryland law the employer owes his employees a nondelegable duty to provide a safe place to work and, thus, the employer cannot escape liability for breach of this duty. Therefore, a supervisory coemployee who performs the nondelegable duty of the employer does not thereby assume a personal duty toward his fellow employees. The decisions in *Jarka Co. v. Gancl,* 149 Md. 425, 131 A. 754 (1926), and *Wood v. Abell,* 268 Md. 214, 300 A.2d 665 (1973), established that at common law the ultimate responsibility of performing nondelegable duties remains with the employer notwithstanding the fact that an employee has been charged with carrying them out. Thus, under the workmens' compensation scheme as well as under the common law, the supervisory employee should not be held liable for breaching a duty such as providing a safe place to work. On the other hand, if a supervisory employee commits an affirmative, direct act of negligence toward an employee, and therefore negligently breaches a personal duty of care which is reasonably owed by him to the fellow employee, then he would not be

immunized from liability. In that circumstance, he would be a third party within the meaning of [Md.Code, (1985), Maryland Workmen's Compensation Act, Article 101, § 58.] [7]

*Id.* at 148–49, 476 A.2d 710.

Thus, the Court in *Athas* recognized the established rule that § 58 allows an employee to sue a coemployee whose negligence caused an injury. The Court concluded that in performing managerial and personnel functions, such as providing Athas a safe place to work and retaining only nonviolent employees, the supervisors discharged only a nondelegable duty of the country club, their employer, and had no duty to Athas. *Id.* at 149, 476 A.2d 710. Nor did the Court find evidence that the supervisors committed any direct act of negligence by failing to reveal or inquire into the chef's criminal record. *Id.* The Court, therefore, found no duty of care owed by the supervisor to Athas.

In reaching this conclusion, the *Athas* Court adopted the "Wisconsin approach" [8] regarding the liability of a supervisory coemployee, which it described as follows:

Under the Wisconsin approach, a corporate officer or supervisory coemployee is subject to liability for negligence if he breaches a duty of care which he personally owed to the plaintiff. The negligence must have been directed toward the particular plaintiff and the tortious act must have been outside the scope of the employer's responsibility. The coemployee is not liable merely for breaching a duty that the employer owed the injured employee.

---

7. Now codified at LE § 9–901.

8. Under Missouri law, the "Wisconsin approach" has been labeled the "something extra" or the "something more" test. This "something extra" is required beyond a breach of a supervisory coemployee's duty of general supervision and safety, for that duty is owed to the employer, not the employee. *State ex rel. Badami v. Gaertner,* 630 S.W.2d 175 (Mo.Ct.App.E.D.1982); Donald L. O'Keefe and Timothy W. Callahan, *Something More than What? A Primer for the Missouri Lawyer,* 61 J. Mo. B. 246 (2005).

As the Supreme Court of Wisconsin stated, "Liability of a corporate officer in a third party action must derive from acts done by such officer in the capacity of a coemployee, and may not be predicated upon acts done by such officer in his capacity as corporate officer." *Kruse v. Schieve*, 61 Wis.2d 421, 426, 213 N.W.2d 64 (1973) (*Kruse I*). The rationale of this view "is that worker's compensation is the exclusive remedy against an employer, and if there is a failure of an officer or employee to perform a duty owed to the employer, the employee's recourse is solely against the employer. When an officer or supervisor fails to perform the employer's duty, the failure is that of the employer, not the officer or supervisor." [9]

300 Md. at 143–44, 476 A.2d 710 (citations omitted).

The *Athas* Court further illustrated the Wisconsin approach by making reference to the decision of the Supreme Court of Louisiana in *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).[10] There, the Court delineated several principles for determining when an officer, agent, or employee should be held individually liable to the injured coemployee. The *Canter* Court concluded that an officer, agent, or employee could be held individually liable to an injured coemployee where the officer, agent, or employee has breached a duty delegated to him or her by the employer through personal fault. *Id.* at 721. However, the Court immediately clarified that:

personal liability cannot be imposed upon the . . . employee simply because of his general administrative responsibility for the performance of some function of the employ-

---

9. We applied the *Athas* holding in *C & K Lord v. Carter*, 74 Md.App. 68, 81–82, 536 A.2d 699 (1988). In *Carter*, the plant manager was not the designer of the conveyor that caused injury to the employee and, therefore, "his involvement with the conveyor was in his capacity as a plant manager." 74 Md.App. at 82, 536 A.2d 699. We concluded that the plant manager was carrying out his employer's nondelegable duty to provide a safe work place and thus shared his employer's immunity under the Workers' Compensation Statute. *Id.*

10. This decision has been superseded by legislative amendment to the Workers' Compensation Statutes.

ment. . . . If the defendant's general responsibility has been delegated with due care to some responsible subordinate . . . he is not himself personally at fault . . . unless he . . . knows or . . . should know of its non-performance or mal-performance and has nonetheless failed to cure the risk of harm.

*Id.* Thus, the *Athas* Court concluded that "[t]he duty of proper supervision is a duty owed by a corporate officer or supervisory employee to the employer, not to a fellow employee." 300 Md. at 147, 476 A.2d 710 (citation omitted). Therefore, a supervisory coemployee is not liable for injuries to a covered employee when the supervisor is delegating work assignments or supervising others in the performance of these assignments because such conduct is an aspect of the employer's nondelegable duty to provide a safe place to work.

■ The Court of Appeals later stated:

*Athas* . . . makes clear that a supervisor's negligence in the performance of his or her supervisory duties is not enough to subject him or her to personal liability. Only if the supervisor directs a negligent act toward a particular fellow employee will the supervisor be held personally liable. Thus, in order for a supervisory coemployee to avoid liability under the Act, at the time of the accident, the supervisor must be: (1) performing a nondelegable duty of the employer; and (2) acting within the course of his or her employment.

*Hastings,* 336 Md. at 676, 650 A.2d 274. With regard to the first prong,[11] the Court of Appeals defined a nondelegable

---

11. In order for Pratchett to benefit from his employer's immunity under the Workers' Compensation Statute, the second prong requires him to have acted in the course of his employment. This requirement refers "to the time, place, and circumstances under which an injury occurred." *Hastings,* 336 Md. at 677, 650 A.2d 274 (citing *Knoche v. Cox,* 282 Md. 447, 455, 385 A.2d 1179 (1978); *Md. Cas. Co. v. Ins. Co. of N. Am.,* 248 Md. 704, 707, 238 A.2d 88 (1968); and *Miller v. Coles,* 232 Md. 522, 526, 194 A.2d 614 (1963)). Therefore, to be immune from suit under the statute, "the supervisor must have acted 'during the period of employment at a place where the employee reasonably may be in the performance of his [or her] duties and while he [or she] is fulfilling

duty as "a duty which the employer is 'primarily and absolutely obliged' to perform properly." *Id.* (quoting *Wood v. Abell,* 268 Md. 214, 238–39, 300 A.2d 665 (1973)). "In other words, the employer remains liable with respect to the duty, regardless of the acts or omissions of the person entrusted to perform it." *Id.* (citations omitted). Under the Statute, "an employer has the nondelegable duty to provide each employee of the employer with employment and a place of employment that are (1) safe and healthful; and (2) free from each recognized hazard that is causing or likely to cause death or serious physical harm to the employee." *Id.* at 676–77. Additionally, the Court stated that " 'routine work assignments and supervision are aspects of the nondelegable duty of providing employees a safe place to work.' " *Id.* at 677 (quoting *Ramey v. Martin–Baker Aircraft Co. Ltd.,* 874 F.2d 946, 952 (4th Cir.1989)).

 Under the Workers' Compensation Statute, as well as the common law, the supervisory employee will not be held liable for breaching a duty such as providing a safe place to work. *Athas,* 300 Md. at 149, 476 A.2d 710. "On the other hand, if a supervisory employee commits an affirmative, direct act of negligence towards an employee, and therefore negligently breaches a personal duty of care which is reasonably owed by him to the fellow employee, then he would not be immune from liability." *Id.*

 In this case, the essence of Hayes's argument is that Pratchett was not performing the nondelegable duty of his employer to provide a safe place to work because he was not acting in a supervisory capacity when moving the customer's car. Rather, Hayes asserts that because Pratchett moved the car himself, he was acting in his capacity as a coemployee, and he owed Hayes a personal duty to exercise due care when

those duties or engaged in ... something incident thereto.' " *Id.* at 677–78, 650 A.2d 274 (quoting *May Dept. Stores Co. v. Harryman,* 307 Md. 692, 695, 517 A.2d 71 (1986)). Here, Pratchett was on duty when the accident occurred; he was moving a customer's car as part of his regular duties; and he was doing so at his place of employment. The stipulated facts satisfy the second requirement set out in *Hastings.*

operating a motor vehicle. Therefore, Hayes avers that Pratchett is not protected by the Workers' Compensation Statute because Pratchett committed a direct act of negligence in breach of his personal duty to exercise care when operating a motor vehicle and not his employer's duty to provide a safe workplace. Hayes argues that, unlike in *Hastings*, where the supervisory coemployee did not perform the act that caused the injuries to the employee but rather failed to ensure that the employee operating the equipment that caused the injury was properly trained, Pratchett performed the negligent act that resulted in Hayes's injuries.

In response, Pratchett argues that because he was a supervisor who was performing a specific job function in moving the customer's car, while he was on the job and at his place of employment, his duty to operate the customer's car in a safe manner was part of his employer's nondelegable duty to provide a safe workplace. Therefore, because Pratchett was performing a nondelegable duty of his employer within the scope of his employment, he claims that he is entitled to immunity from suit under the Workers' Compensation Statute. Pratchett's argument hinges on the proposition that the performance of routine work assignments by a supervisor is an aspect of the nondelegable duty of providing employees with a safe place to work. Pratchett relies on the Fourth Circuit's decision in *Ramey v. Martin–Baker Aircraft Co.*, 874 F.2d 946 (4th Cir.1989), to support his argument, but a close reading of *Ramey* reveals that a supervisory co-employee performs his employer's nondelegable duty to provide a safe workplace where he delegates work assignments or supervises other employees in the performance of their assignments, but not where he performs the assignments himself.

In *Ramey*, the plaintiff, an Air Force trained aircraft mechanic working for Kirk–Mayer, Inc., was assigned to the McDonnell Douglas Corporation for service at the Navy's Patuxent River Naval Air Test Center. 874 F.2d at 947. On October 27, 1981, Ramey's supervisor, Quinten Rix, instructed Ramey to assist Thomas E. Waller, another aircraft mechanic, with the removal of the SJU–5 ejection seat from an F–18. *Id.*

While removing the ejection seat, Ramey and Waller inadvertently triggered the seat's explosive charges. *Id.* The explosion caused Ramey to fall from the plane's wing resulting in injuries to Ramey's left leg and foot. *Id.*

Ramey and his wife sued Martin–Baker, McDonnell Douglas, Rix, and Waller in the Circuit Court for St. Mary's County seeking damages for Ramey's injuries and for harm to their marital relationship. *Id.* at 948. The circuit court granted summary judgment in favor of McDonnell Douglas holding that it was immune from suit under Maryland's Workers' Compensation Statute. *Id.* The remaining defendants removed the suit to the federal district court. *Id.* The district court granted summary judgment in favor of Rix and Martin–Baker finding that Rix was immune from suit under the Statute because he was a supervisory employee acting in furtherance of a nondelegable duty of his employer and that Martin–Baker was immune from suit under the military contractor defense. *Id.*

■ On appeal, the Fourth Circuit affirmed the district court's grant of summary judgment in favor of both defendants. As to the judgment in favor of Rix, the Fourth Circuit held that Rix's actions "were in furtherance of McDonnell Douglas's nondelegable duty to Ramey, and created no personal duty of care on Rix's part." *Id.* at 952. In reaching this conclusion, the Fourth Circuit stated that under the Wisconsin approach to coemployee liability, which the Court of Appeals adopted in *Athas*, "routine work assignments and supervision are aspects of the nondelegable duty of providing employees a safe place to work." *Id.* However, in *Ramey*, the supervisory coemployee was not performing the routine work assignment himself, instead he was "performing McDonnell Douglas's duty of selecting and assigning workers to tasks" and supervising those workers in the performance of their tasks. *Id.* Thus, it is not the performance of routine work assignments that is part of the employer's nondelegable duty to provide a safe workplace but the selection of which employees will perform which assignments and the supervision of employees

in the performance of their assignments that is part of the employer's nondelegable duty. Here, Pratchett was not assigning tasks or supervising employees in the performance of their tasks; rather Pratchett was performing the task himself in moving the customer's car.

In *Ramey*, the Fourth Circuit faced a similar fact pattern as the Court of Appeals in *Athas*. In *Ramey*, the plaintiff alleged that his supervisor was negligent in assigning him to remove the ejection seat from an F–18, while in *Athas*, the plaintiff alleged that his supervisors were negligent in hiring the employee who attacked him. In both cases, the allegedly negligent act involved supervisory tasks such as the distribution of work assignments or the hiring of employees. However, here, Pratchett was not assigning a task, but performing the task himself. This is a key distinction because in performing the task himself, Pratchett is no longer acting in his role as a supervisor, but instead he is acting as a coemployee. As a coemployee, he is not performing his employer's duty to provide a safe workplace. Rather, as the driver of a motor vehicle, he owes a personal duty of care to all other travelers, including Hayes. *See Brehm v. Lorenz,* 206 Md. 500, 505, 112 A.2d 475 (1955) ("The general rule has been established in this state that every automobile driver must exercise toward other travelers on the highways that degree of care which a person of ordinary prudence would exercise under similar circumstances.") (citing *Cocco v. Lissau,* 202 Md. 196, 95 A.2d 857 (1953); *Domeski v. Atl. Ref. Co.,* 202 Md. 562, 97 A.2d 313 (1953); *State v. Magaha,* 182 Md. 122, 32 A.2d 477 (1943)). *See also Tavarez v. Klingensmith,* 372 F.3d 188, 193 n. 4 (2004) (applying Virgin Island law and holding that a truck driver, who was injured when his left front tire blew out, could not sue his supervisor, who had refused to grant permission to have the left front tire replaced, because the supervisor was performing the employer's nondelegable duty to provide a safe workplace, but distinguishing Tavarez's suit involving the existence of a safe workplace from suits for breach of a personal duty such as exercising due care in operating a vehicle.).

The circuit court erred in its granting of the motion for summary judgment. The brief statement of facts indicates that Pratchett, while working, was in the process of moving a customer's 1999 Honda Accord from a parking space when the vehicle collided with a vehicle Hayes was driving. There is no indication in the record that this was the duty of a supervisor rather than a coemployee in the tire service center. The driving of the vehicle by Pratchett would be the "additional factor" or "something extra" which caused the injury to Hayes. That duty is different from the duty of proper supervision that is owed to the employer by a corporate officer or a supervisory employee. A supervisory employee's affirmative act of negligence goes beyond the scope of the nondelegable duty of the employer to "provide his employees with a safe place to work, *i.e.* safe conditions." *Athas*, 300 Md. at 146, 476 A.2d 710 (citation omitted). Pratchett's actions at the time of the accident, on the facts as agreed, would not have entitled him to immunity from suit under the Workers' Compensation Statute.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. CASE REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.**