REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2117

September Term, 2012

LESLIE VALENTINE-BOWERS

v.

THE RETINA GROUP OF
WASHINGTON, P.C., ET AL.,

Berger,
Nazarian,
Eldridge, John C.*
        (Retired, Specially Assigned),

JJ.

Opinion by Nazarian, J.

Filed: May 29, 2014

* Judge Eldridge participated in the argument
of this case but did not participate in the
decision.

Appellant Leslie Valentine-Bowers appeals the dismissal by the Circuit Court for Prince George's County of her medical malpractice case against appellee The Retina Group of Washington ("TRG") and appellee Nicole Moffett, O.D. ("Dr. Moffett"). The trial court dismissed the case because counsel for Ms. Valentine-Bowers had failed repeatedly to comply with discovery deadlines, including orders of the court. We find no abuse of discretion in that decision and affirm.

## I. BACKGROUND

Ms. Valentine-Bowers alleged that between February 2006 and August 2008, TRG and Dr. Moffett, among others, failed to monitor a condition in her right eye that ultimately caused her to lose vision in that eye. The appellees dispute the merits of her claim, but the underlying substance doesn't matter to this appeal. The procedural history does, beginning after Ms. Valentine-Bowers served her Complaint, *first* on TRG, on November 4, 2011,[1] and *second*, on Dr. Moffett on December 2, 2011.

On December 2, 2011, TRG filed an Answer, along with Interrogatories and a Request for Production of Documents. Ms. Valentine-Bowers's responses were due on December 30, 2011 under Maryland Rules 2-421(b) (with respect to the Interrogatories) and 2-422(c) (with

---

[1] That Complaint actually was not the first. Ms. Valentine-Bowers initially filed a Statement of Claim with the Maryland Health Care Alternative Dispute Resolution Office on January 27, 2010. She then filed one Complaint in circuit court on March 23, 2010, against Dr. Moffett (along with two other parties whom she later voluntarily dismissed ). She filed a separate Complaint on September 14, 2010, naming TRG as a defendant. The trial court consolidated the two cases on September 12, 2011, and the referenced Complaint followed.

respect to the Request for Production), but she did not file them. Her failure to comply with the deadline is unremarkable—parties routinely miss this deadline and litigators know that absolute compliance is not always possible (although they do, and should, expect at least a request for an extension and a good faith deadline in return).

But after nearly two more months had passed with no response, TRG's counsel wrote to counsel for Ms. Valentine-Bowers on February 29, 2012, asking when he intended to provide discovery responses and when Ms. Valentine-Bowers would be available for her deposition. Her counsel again failed to respond, and TRG's counsel sent a second letter on March 15, 2012. This time around, counsel upped the ante, warning that if he received no response by March 23, 2012, he would file a motion with the court and unilaterally note the deposition. Neither a response nor a motion followed right away, and counsel for TRG even waited until April 27, 2012 before he called and left follow-up messages for Ms. Valentine-Bowers's counsel. Again, he received no response.

On May 4, 2012, in what he characterized as "an attempt to stir [her] into action," TRG's counsel noted Ms. Valentine-Bowers's deposition for July 6, 2012. Then, on May 7, 2012 TRG filed a Motion to Compel Discovery seeking a court order requiring that Ms. Valentine-Bowers respond to the Interrogatories and Request for Production. Her counsel neither filed an opposition nor contacted counsel for TRG in response.

On May 31, 2012, the circuit court granted TRG's Motion to Compel and ordered Ms. Valentine-Bowers to "provide" answers to interrogatories and "produce" the requested

2

documents by June 18, 2012—with the express warning that if she failed to do so she "may be subject to sanctions and/or penalties ordered by this Court." Evidently, however, this motion was not docketed, and counsel for Ms. Valentine-Bowers claims not to have received it.[2] We are prepared to assume for present purposes that counsel never did receive the motion, and that could explain why counsel never complied with the Order. But after more silence followed, TRG filed another Motion for Sanctions on June 27, 2012 (a motion counsel indisputably *did* receive), in which it sought dismissal based on Ms. Valentine-Bowers's failure to comply with the Order.

Dr. Moffett had a similar experience that occasioned a similar series of motions. She filed an Answer on December 29, 2011 and served Interrogatories and a Request for Production of Documents on December 20, 2011. Dr. Moffett's counsel wrote to Ms. Valentine-Bowers's counsel on January 31, 2012 because he had not received any responses. It appears that one conversation took place thereafter, as a March 7, 2012 letter from Dr. Moffett's counsel referred to a two-week extension based on a discussion between counsel "[a]t the end of January." Ms. Valentine-Bowers's counsel apparently did not comply with that extension, and that letter drew no response. Dr. Moffett's counsel tried calling counsel on May 4, 2012, and again received no response.

---

[2] Although at oral argument counsel blamed problems with his fax machine on the derecho that raced through the eastern half of the country that year, the order granting TRG's motion to compel predated that storm by nearly a month. *See* Nat'l Oceanic & Atmospheric Admin., *The Historic Derecho of June 29, 2012* (January 2013), http://www.nws.noaa.gov/os/assessments/pdfs/derecho12.pdf.

3

So on May 8, 2012, Dr. Moffett filed a Motion to Compel based on Ms. Valentine-Bowers's failure to respond to the Interrogatories or the Request for Production. The court denied that motion because it lacked the required Rule 2-431 Certificate.[3] Dr. Moffet filed a Second Motion to Compel on June 5, 2012 that attached a proper Certificate; that motion went unopposed and the Court granted it on July 5, 2012. The July 5 Order contained the same directives and warning as the May 31 Order, *i.e.*, that Ms. Valentine-Bowers was to "provide full and complete Answers to Interrogatories and to produce all requested documents," this time to Dr. Moffett, "by or before July 12, 2012," or she would be subject to sanctions. Handwritten notations on the Order indicate that the trial judge's law clerk actually *called* Ms. Valentine-Bowers's counsel to make him aware of the Order's contents, a point counsel acknowledges.

The noted deposition date of July 6 arrived, and, although counsel for all defendants appeared at TRG's counsel's offices according to the Notice, Ms. Valentine-Bowers and her counsel did not.[4] Accordingly, on July 9, 2012, TRG filed a Supplemental Memorandum in support of the Motion for Sanctions, and cited this additional discovery failure as a reason to dismiss the case.

---

[3] Rule 2-431 requires that a party certify with specificity counsel's good faith attempts to resolve a discovery dispute before resorting to court intervention.

[4] She argues here that counsel believed the deposition notice was facially defective because it noted the deposition outside the jurisdiction where the action was pending, *i.e.*, at the office of TRG's counsel in Anne Arundel County. It does not appear that he ever shared this belief with TRG's counsel or the trial court until he filed the Motion for Reconsideration on October 15, 2012, nor did counsel ever seek a protective order.

The trial court's second compliance deadline, July 12, came and went, and the appellees heard nothing from Ms. Valentine-Bowers. We say "heard nothing from" because according to her counsel, the appellees "were served with" Ms. Valentine-Bowers's answers to "all outstanding discovery on or about July 12, 2012," but that's not quite true. In fact, Ms. Valentine-Bowers's counsel *mailed unexecuted* Answers to Interrogatories on July 12, 2012. Counsel for the appellees received the unexecuted answers on July 16, 2012. Counsel for Ms. Valentine-Bowers mailed the signature page, dated July 13, 2012, on July 17, 2012.

After receiving the unexecuted, undated responses, the appellees consolidated all grounds for dismissal in *one* motion, the "Defendants' Joint Motion for Sanctions" (the "Joint Motion"), which they filed on July 20, 2012. In support of the Joint Motion, and as a basis for dismissing the case, the appellees cited Ms. Valentine-Bowers's multiple failures to respond to outstanding discovery, her failure to appear for her deposition, and her failure to comply with the July 5 Order.

The trial court held a hearing on October 5, 2012 ("the Hearing"). TRG's counsel argued that the case warranted dismissal *first*, because of Ms. Valentine-Bowers's failure to comply with the Court's July 5 Order by failing to provide interrogatory responses by July 12, and *second*, because of her failure to appear at her properly noticed deposition. He also cited counsel's repeated failure to respond to any inquiries about the status of the discovery responses. Counsel for Ms. Valentine-Bowers argued not only that he had complied with all discovery deadlines but also, perhaps on the theory that the best defense is a good offense,

5

that the *defendants* delayed discovery by waiting to pursue expert depositions and unjustifiably sought the "windfall" of dismissal. Counsel blamed delays on his side mainly on his client, whom he evidently had had difficulty contacting.

The court granted the Joint Motion (clarifying as much at the end of the hearing), which rendered TRG's and Dr. Moffett's separate motions moot. The court pointed out that Ms. Valentine-Bowers filed the original Complaint on March 24, 2010, and it then reviewed the chronology of the discovery motions, noting her obligation to communicate with, and remain accessible to, her counsel as a plaintiff in litigation:

> A look through the file shows that numerous motions to compel . . . were filed by [TRG,] all going unanswered. That the Court issued orders in these cases, one on May 31st, 2012, requiring that [Ms. Valentine-Bowers] . . . be and hereby is ordered to provide full and complete answers to interrogatories and produce all requested documents to [TRG] by or before [June 18]. The last order that, if [Ms. Valentine-Bowers] fails to provide said discovery to [TRG] by or before the aforementioned date, [she] may be subject to sanctions and/or penalties ordered by the Court. No discovery was provided by [Ms. Valentine-Bowers] to counsel.
>
> Second motions or additional motions to compel were filed by [appellees]. An order again was granted and issued by this Court dated July 5th, 2012. Again, I read from that order. That pursuant to representation by [Ms. Valentine-Bowers's] counsel, she be and hereby is ordered to provide full and complete answers to interrogatories and produce all requested documents to [Dr. Moffett] by or before July 12th, 2012. The last order paragraph, that if [Ms. Valentine-Bowers] fails to provide said discovery to [Dr. Moffett] by or before the aforementioned date, [she] may be subject to sanctions and/or penalties as ordered by this Court.

6

And obviously having reviewed the file in the great detail I have, outlining these two order[s] most notably, clearly there's been a failure to comply by [Ms. Valentine-Bowers]. [Plaintiff's counsel] in his representations to the Court says well, we haven't complied, we haven't responded because I just didn't know where my client was. It certainly appears to the Court that he attempted to reach her by accepting his representations as true. He's an officer of the court. That he attempted to reach her, was unable to do so despite his numerous attempts. That finally, at some point he was able to reach her, and you know, inquired as to, you know, what's going on. Are you interested in this case? She says yes, and her information is changed and her e-mail however, appeared to remain the same.

Certainly the Court recognizes the duty upon [Ms. Valentine-Bowers] to keep herself in contact with her counsel. If her address changes, her numbers change, as this Court is aware of, and the counsels as well. It's certainly [her] responsibility to keep her counsel informed. Even though it appeared that at a minimum her e-mail address remained the same and [her] counsel indicates he attempted or many times did send e-mails and had no response.

But nonetheless, the requirement is hers to remain in contact with her counsel, and I would concur with [TRG's counsel's] representation that an individual who initiated a complaint such as this, remain interested in its pursuit would at a minimum have remained in contact with her counsel. And it appears many months have gone by where she didn't. And a simple apology isn't really, while recognized and accepted, is not the remedy of which the Court can rely upon. Recognize in this case that it's a medical malpractice action. That it requires discovery. It requires a lot of effort and work be placed on the parties, most notably in this case, [appellees,] to be able to defend against this action.

The court then detailed the five factors a trial court should consider in determining

whether dismissal is the appropriate sanction for a party's failure to comply with discovery,

7

*see Hossainkhail v. Gebrehiwot*, 143 Md. App. 716, 725-26 (2002), and concluded that

dismissal was justified here:

> I was provided and have reviewed [*Hossainkhail*, which] outlines for the Court . . . what we should consider in determining whether to impose discovery sanctions. And it outlines [*first,*] whether the discovery violation was technical or substantial. And clearly in this case, it was substantial. It was a complete disregard of discovery requests, numerous, as outlined by motions, by a failure to comply with a Court order[. *Second*,] the timing of the ultimate disclosure. It appears that three to four days after the deadline for the order was, the discovery appeared to be responded, provided. It was unexecuted answers. So I don't find that the ultimate discovery was provided. I find that it was incomplete and certainly outside, well outside the orders of this court.
>
> [*Third*, the] reason for the violation as provided, in this case the reason is, they just couldn't find [Ms. Valentine-Bowers]. They just tried to reach her, couldn't find her for all these months, didn't know where she was, and she did not contact her counsel despite knowing that she had filed this medical malpractice [action] against these many defendants. Despite knowing that she would need to remain in contact with her counsel to be able to participate. [*Fourth*, the] degree of prejudice of the parties offering or imposing the evidence. In this case, the prejudice to [appellees] is great. There's case law, and I think one of the ones cited was the *Hart* case, where it talks about the long delay and what the detriment is to the party seeking the discovery.
>
> The memory of witnesses fade. The ability to locate witnesses becomes an issue. And so, certainly the Court can find prejudice exists to [appellees] in this case when a long time passes, such as in this case, when [Ms. Valentine-Bowers] has failed to respond to discovery. And [*fifth*,] whether any resulting prejudice might be cured by a postponement. And I don't find that a postponement in this case would cure this prejudice. This matter is scheduled for trial in January. It's certainly a complex medical malpractice case. It involves many parties. And, the fact

8

that at the last minute [Ms. Valentine-Bowers] sent some unexecuted answers doesn't in and of itself find that she has tried to remedy the situation.

I also note [Ms. Valentine-Bowers] failed to appear for deposition. [Her counsel] acknowledges that he received that deposition notice, was unable to contact his client, and just assumed [counsel for TRG] would call and say well, are you going to be there. Certainly there is a requirement upon [Ms. Valentine-Bowers] to respond to these requests. I find that it would be fundamentally unfair to allow this continuous disregard for the Court orders. It was a disregard for the scheduling order. A disregard of the order that was granted as to the motion to compel. And we look at the purpose behind requiring the parties to comply with these order[s], to reply [to] the discovery requests. And certainly, it is to discourage violations of discovery deadlines.

And, in the case provided to the Court, certainly the Court took great length in addressing the fact of the fault. How did this discovery violation occur. In this case, the fault is squarely on [Ms. Valentine-Bowers]. It was a complete disregard of the Court order. All actions or inactions were done at the direction of [Ms. Valentine-Bowers]. And nothing has been presented to the Court to persuade this Court that prejudice would not exist to [appellees] to deny their request for sanctions today. That nothing's been presented to the Court to show good cause has been demonstrated for [Ms. Valentine-Bowers's] failure to comply with the Court's order.

And so for all of those reasons, I grant the [appellees'] request for sanctions and the matter is dismissed.

Ms. Valentine-Bowers filed a Motion for Reconsideration on October 15, 2012, and the court denied that motion on November 29, 2012.[5] She filed a timely notice of appeal.

## II. DISCUSSION

Newton's Third Law of Motion posits that "[f]or every action, there is an equal and opposite reaction." E.D. Hirsch, Jr., *et al.*, *The Dictionary of Cultural Literacy* 457 (1988). Not so here: nearly every action on the part of TRG's counsel, Dr. Moffett's counsel, or the court, whatever their means of communication and on an impressive number of occasions,[6] induced no reaction at all from Ms. Valentine-Bowers. Her counsel ignored letters, phone calls, notices filed with the court, and court orders, and her brief on appeal neglects to mention these facts. As counsel for TRG put it, perhaps most tellingly, the Hearing marked "the first time that our office has ever heard [Ms. Valentine-Bowers's] counsel's voice, and we're three months, well, two months from the trial date in this matter."[7] And while perhaps

---

[5] Although the "Appellant's Record Extract" purports in the Table of Contents to include a copy of the trial court's denial of the Motion for Reconsideration, it does not cite to a page, and our review of the extract did not reveal it. Moreover, according to counsel for Dr. Moffett, Ms. Valentine-Bowers's counsel never consulted him about preparation of the record extract—another instance of noncompliance that might not merit dismissal of the appeal on its own, but that bolsters our conclusion that the circuit court was well within its discretion to dismiss this case.

[6] By our count, counsel did not respond to at least ten letters, phone calls, or notices, and five separate motions; and, of course, Ms. Valentine-Bowers failed to appear for her deposition or comply with either Court Order.

[7] To be fair, one letter in the Record Extract from Dr. Moffett's counsel purports to memorialize a conversation with Ms. Valentine-Bowers's counsel in which the former agreed to a two-week extension of time for the latter's discovery responses.

some of the delays might have been excusable, the circuit court, in its discretion, properly analyzed the relevant factors and ordered dismissal. Ms. Valentine-Bowers attacks that decision on three separate grounds that we address below, but the reply to each is that the circuit court did not abuse its discretion in deciding to dismiss the case after repeated discovery failures and an unambiguous warning from the court.

Maryland Rule 2-433(a)(3) gives trial courts broad discretion to impose sanctions for discovery violations. The available sanctions range from striking out pleadings to dismissal, *id.*, and the decision whether to invoke the "ultimate sanction" is left to the discretion of the trial court. *See Mason v. Wolfing*, 265 Md. 234, 236 (1972) ("Even when the ultimate penalty of dismissing the case or entering a default judgment is invoked, it cannot be disturbed on appeal without a clear showing that [the trial judge's] discretion was abused."). There need not be "wilful or contumacious behavior" by a party to justify imposing sanctions. *Warehime v. Dell*, 124 Md. App. 31, 44 (1998) (quoting *Beck v. Beck*, 112 Md. App. 197, 210 (1997)).

As we explained in *Sindler v. Litman*, 166 Md. App. 90 (2005), "[o]ur review of the trial court's resolution of a discovery dispute is *quite narrow*; appellate courts are reluctant to second-guess the decision of a trial judge to impose sanctions for a failure of discovery." *Id.* at 123 (emphasis added). Differently put, in order to reverse a trial court's decision, it must be "'well removed from any center mark imagined by the reviewing court and beyond the fringe of what the court deems minimally acceptable.'" *Wilson v. John Crane, Inc.*, 385

11

Md. 185, 198-99 (2005) (quoting *In re Adoption/Guardianship No. 3598*, 347 Md. 295, 313

(1997) (internal citations omitted)).

The trial court here decided that Ms. Valentine-Bowers's failure to comply with

discovery deadlines warranted dismissal after reviewing the five factors we articulated in

*Hossainkhail*:

> (1) whether the disclosure violation was technical or substantial;
> (2) the timing of the ultimate disclosure; (3) the reason, if any,
> for the violation; (4) the degree of prejudice to the parties
> respectively offering and opposing the evidence; and (5)
> whether any resulting prejudice might be cured by a
> postponement and, if so, the overall desirability of a
> continuance. The factors often overlap and do not lend
> themselves to a compartmental analysis.

143 Md. App. at 725-26 (citations omitted). The trial court noted and analyzed each factor,

and pointed generally to counsel's "complete disregard of discovery requests," and his

"failure to comply with a Court order," because the only discovery counsel even arguably

provided by the court's deadline consisted of *unexecuted* Answers to Interrogatories.

Although the court acknowledged that counsel may have had problems finding Ms.

Valentine-Bowers to execute the interrogatories, it also noted *her* affirmative obligation to

stay in touch with counsel, and that her failure to appear at her deposition placed fault

"squarely" on her own shoulders.

Ms. Valentine-Bowers breaks down the issues on appeal very specifically, claiming

one error with respect to the complaint against each appellee, and one overall error by the

trial court. She contends *first*, that the trial court abused its discretion by dismissing the

12

Complaint against *Dr. Moffett* because delivery of an executed signature page came three days after the deadline; *second*, that the court likewise abused its discretion by dismissing the Complaint against *TRG* for failure to comply with the May 31 Order when it was not docketed or received by counsel; and *third*, that the court erred by dismissing the Complaint against *both appellees* based on her failure to appear for deposition. TRG and Dr. Moffett, on the other hand, see the case more broadly, and argue that the discovery violations were "significant," "substantial," and "ongoing." As such, they argue, the trial court's application of the five *Hossainkhail* factors to Ms. Valentine-Bowers's aggregate discovery failures amply justified dismissal.

We too view the issues more broadly. The trial court granted the parties' *Joint* Motion for Sanctions after examining the entire course of discovery and counsel's chronic inaction throughout, and (properly, in our view) grounded its decision to dismiss the case on the overall impact of the multiple breaches. Indeed, the factors the circuit court was required to consider "do not lend themselves to a compartmental analysis." *Hossainkhail*, 143 Md. App. at 726 (citation omitted). We do not look at each incident in isolation, but rather at the entire history and context of the case in reviewing the trial court's decision to dismiss.

### 1. Nature of the disclosure violation—technical vs. substantial.

The violation here was not technical (let alone, as Ms. Valentine-Bowers puts it in her brief, "hyper-technical"), but substantive and substantial. We have explained in the past that "belated disclosures [are] material and relevant to appellees' ability to prepare a defense."

13

*Saxon Mortg. Servs., Inc. v. Harrison*, 186 Md. App. 228, 253 (2009). Disregard of discovery

deadlines constitutes a "substantial violation" because the plaintiff, as the party initiating suit,

has an affirmative duty to move her case toward trial:

> Appellant had a duty to move the case forward. Appellant
> shirked this duty and offered no good cause for his dilatory
> conduct. Appellant summarily attributed his absence to personal
> problems but made no showing why he could not and did not
> keep in touch with counsel when he obviously knew he had a
> case pending. The court may grant little weight to appellant's
> unsupported explanation for the delay.

*Hossainkhail*, 143 Md. App. at 726 (citation omitted).

We disagree with Ms. Valentine-Bowers that *Hart v. Miller*, 65 Md. App. 620 (1985),

suggests a different result. There, we reversed a trial court's dismissal of a personal injury

action for the plaintiff's failure to reply timely to interrogatories. But we did so because the

trial court failed to exercise its discretion in the first place, not because of any facts similar

to these. The trial court had incorrectly concluded in *Hart* that it was *required* to dismiss the

case based on delays in the plaintiff's producing discovery, and did not even consider the fact

that the plaintiff (as opposed to plaintiff's counsel) was not responsible for or aware of the

delay in providing responses. *Id.* at 627. Moreover, the plaintiff's counsel, who had delayed

in responding to discovery, had been absent from his solo practice for five months due to an

injury, but still corresponded with counsel for the defendants twenty-two times over the less-

than-eleven-month period in question. *Id.* at 623. The plaintiff, too, had been hospitalized for

a large part of the time period in question. Depositions had taken place, and hundreds of

14

pages of medical reports had been provided to the defendants, along with 250 pages of attachments and enclosures to the answers to interrogatories. *Id.* at 624.

Here, on the other hand, Ms. Valentine-Bowers's violations were substantial. *First,* she failed to appear for her deposition. Her counsel failed to object to the deposition notice, and he never contacted appellees' counsel to inform them of his intention not to appear. Although he claimed that in his experience, he expected opposing counsel to call him as that date approached (apparently seeing their failure to do so as excusing him from compliance), the court below in its discretion was entitled to "grant little weight to [his] unsupported explanation for the delay." *Hossainkhail*, 143 Md. App. at 726 (citing *Lone v. Montgomery County*, 85 Md. App. 477, 486 (1991)).

*Second*, Ms. Valentine-Bowers's failure to file properly executed, responsive interrogatories within the time allotted by the trial court following the July 5 Order also constituted a substantial violation. The appellees had no basis on which to move forward with other discovery until they had Ms. Valentine-Bowers's deposition testimony in hand.[8] Whether or not this was a "strategic call," as Ms. Valentine-Bowers claims, they were well within their rights to make that decision. Indeed, given Ms. Valentine-Bowers's counsel's total failure to respond to their many requests for the most basic discovery, they had no reason to spend time on preparation of further discovery. *See Warehime*, 124 Md. App. at 48

---

[8] Although Ms. Valentine-Bowers did file her expert witness disclosure in a timely fashion, this did not relieve her of the obligation to respond to the rest of the appellees' discovery requests or their requests for dates to take her deposition.

("The purpose of discovery is to eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation." (Citations and internal quotation marks omitted.)).

## 2. The timing of the ultimate disclosure.

Contrary to Ms. Valentine-Bowers's claim here, the trial court credited her counsel's assertion that he never received the May 31 Order.[9] He doesn't claim, though, that he didn't know about the July 5 Order, and his late compliance with *that* order properly contributed to the trial court's conclusion. He claims the trial court's July 12, 2012 deadline only required that he *mail* discovery by then, in keeping with Maryland Rule 1-321(a), and the fact that the signature page followed after the deadline really meant nothing when "[n]o changes were made to the information contained" in the answers.

This argument reveals an unfortunately nonchalant approach to discovery that has become all too common in our profession. *See* Janet Sidman Eveleth, *Court Considers Reforms to Advance Legal Professionalism*, 40-APR Md. B.J. 42, 45 (2007) (noting the finding of the Maryland Judicial Task Force on Professionalism that the decline in professionalism in lawyers was "marked by rancorous discovery disputes, a loss of trust

---

[9] To the extent counsel complains that the May 31 Order could not serve as the basis of a finding that he committed a discovery violation, he argues the wrong point. At the hearing, the trial court referred only to his failure to comply with the *July 5 Order*, and counsel does not contend that he was unaware of *that* Order's contents. The court referenced the "failure to comply with a Court order," and in the next sentence explains that "three to four days after the deadline for the order was, the discovery appeared to be . . . provided." The court plainly was referring to the July 5 Order, not to the May 31 Order.

16

between lawyers, . . . [and] a lack of civility in and out of the courtroom"). The July 5 Order required Ms. Valentine-Bowers—"pursuant to representations made by [her] counsel"—to "*provide full and complete* Answers to Interrogatories" and "*produce all requested documents*" "by or before" July 12, 2012. (Emphasis added.) The court could not have been clearer that the *completed discovery* had to be *in the hands of the appellees* by July 12. And it was neither: aside from being incomplete, the answers themselves were woefully inadequate. We do not go into detail here, but their substantive failings added yet another straw onto the back of an already overburdened camel.

*First*, the specific Court Order (the capitals are intentional) trumps any general rule regarding the meaning of the word "service." The simple dictionary definition of "provide" is to "supply or make available," Merriam-Webster Collegiate Dictionary 1001 (11th ed. 2011); and of "produce," to "offer to view or notice." *Id*. at 991. The common-sense definition, too, suggests that putting something in the mail is not the functional equivalent of getting it to someone on a date certain. *See Bush v. Pub. Serv. Comm'n of Maryland*, 212 Md. App. 127, 137 (2013) (holding that utility customer's mailing of a petition did not constitute the "filing" of the petition, as filing was not effectuated until the petition was received by the clerk).

*Second,* counsel's failure to comply with the July 5 Order's mandate, even if not deliberate, demonstrates a chronic disregard for the parties and the court in this case. And "willful" conduct need not be affirmative conduct—neglect or failure to act can be just as

17

"willful" as affirmative "contumacious" conduct, and counsel demonstrated that type of willful disregard throughout the life of this case.

*Third*, even if he *had* gotten the Answers to Interrogatories to the appellees by July 12, they were still *unexecuted*, and therefore did not comply with the July 5 Order because they were not "complete."

We note *finally* that, in terms of timing, counsel had the benefit of more than the standard amount of time for discovery: Ms. Valentine-Bowers filed the initial claim before the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO") on January 27, 2010 (where the same counsel represented her). She did not serve the parties here until nearly two years later, in November 2011. Later requests for discovery went unanswered from the time of their filing in December 2011 until Ms. Valentine-Bowers's counsel's filing of discovery in mid-July—over seven months later. In light of the appellees' efforts to get those responses, and the inordinate delay occasioned by Ms. Valentine-Bowers and/or her counsel, the circuit court could readily have decided that the case needed to end.

### 3.    The reason for the violation.

The trial court properly credited counsel's claim that he could not locate his client, but just as properly pointed out that this placed fault for the continued delay squarely on the plaintiff herself. It is the duty of a plaintiff to "move [her] case forward," *Hossainkhail*, 143 Md. App. at 726, and Ms. Valentine-Bowers (or her counsel) "shirked this duty and offered no good cause for [the] dilatory conduct." *Id*. Although counsel claims it was Ms. Valentine-

18

Bowers's failure to respond to inquiries that caused the delays, we find that claim inadequate for two reasons. *First*, counsel offered absolutely no evidence to support the claim to the trial court; and *second*—and more to the point—he never saw fit to convey this difficulty to the other side (or, for that matter, to the court) until his back was against the wall. As we pointed out above, counsel failed to respond to letters, calls, or orders on numerous occasions, which meant that throughout the case, only he actually knew whether there *was* any "reason for the violation." This failure to communicate gave the trial court more than an adequate basis to weigh this factor in favor of the appellees.

### 4.     The degree of prejudice to the parties.

The trial court acted within its discretion in finding a substantial degree of prejudice. Ms. Valentine-Bowers's counsel claims on appeal that the time frame for discovery could simply have been enlarged, and somehow manages to turn the tables and argue that the *appellees* neglected discovery by failing to note the depositions of experts or other witnesses. Putting aside that we don't see any reason they would have bothered to do so (*first* because of counsel's failure ever to respond to any filing, and *second* because appellees could justifiably have viewed Ms. Valentine-Bowers's deposition as a necessary precursor to any other discovery they might have wished to conduct), we agree with the trial court's assessment that prejudice to the appellees was "great." As the court put it, "[t]he memory of witnesses fade. The ability to locate witnesses becomes an issue. And so, certainly the Court can find prejudice exists to [appellees] in this case when a long time passes, as such

19

in this case, when [Ms. Valentine-Bowers] has failed to respond to discovery." *See Warehime*, 124 Md. App. 31, 49 (1998) ("[T]here is prejudice inherent in delaying a trial, because the memories and even the location of witnesses can become problematic when, as here, the years go by.")

As of the date the trial court considered the Joint Motion, October 5, 2012, more than *six* calendar years had passed since the first alleged underlying act of negligence in this case. Ms. Valentine-Bowers filed the original claim in HCADRO on January 27, 2010, so by the time she produced executed Answers to Interrogatories on July 17, 2012, more than two-and-a-half years had gone by. And contrary to Ms. Valentine-Bowers's claim in her brief that the appellees simply filed "a bevy of discovery Motions [sic] in search of a windfall" rather than conduct discovery, as we see it and as the trial court properly saw it, the appellees simply filed motions (after letters and phone calls failed to prompt any response) in an attempt to get *some* response from counsel, who never once replied until he got late, non-compliant discovery to the appellees after July 12, 2012.

Again, *Hart* does nothing to change the outcome. There, plaintiff's counsel's health problems were one of many reasons for delay, and the trial court did not demonstrate that it exercised any discretion in choosing the alternative of dismissal over others. We found compelling there, too, the fact that much work had already been done by counsel for *both* parties, and "[w]hat remained to be done was trivial in comparison," so that to dismiss the case would run "counter to valid societal preference for a decision on the merits." *Hart*, 65

20

Md. App. at 628. That certainly was not the case here—much work had *not* been done, because Ms. Valentine-Bowers had not provided the responses that would have allowed counsel for the appellees to conduct follow-up discovery.

*Finally*, we note that whatever the trial court *could* have done by way of a postponement, it was not *required* to do so. Discretion means just that—it was up to the trial court to fashion a remedy that it deemed appropriate in light of the course of discovery here. Given the path the case took, and the plaintiff's contribution to the delays, the trial court did not abuse its discretion in selecting the remedy of dismissal.

### 5. Whether a continuance would cure prejudice and is desirable.

The trial court found that a continuance would not cure prejudice, in light of the complexities of the case and counsel's half-hearted attempts to respond to the July 5 Order, and we agree. Counsel's track record in this case gave the court no reason to think he would suddenly start cooperating or responding to the appellees in the event the court permitted postponement.

We also cannot let this case pass without remarking on the substance of Ms. Valentine-Bowers's brief as it relates to that track record. Counsel neglects to mention in his own recitation of the events that he did not reply to repeated requests for discovery. His decision to leave out many of the pieces of the puzzle that ultimately revealed a picture of utter disregard on his part renders the brief misleading, to say the least. But it also misconstrues the whole point of making available as a discovery sanction the "draconian

21

remedy" of dismissal. The trial court did not apply that sanction here, as he claims, on a "hyper-technicality"—the court appropriately dismissed a case where counsel's failure to respond to numerous and repeated inquiries from the opposing parties' counsel, coupled with his all-too-nonchalant failure to comply with a court order, revealed a pattern of conduct that made dismissal eminently justifiable, and well within the trial court's discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT**.